ACCEPTED
12-15-00186-CR
TWELFTH COURT OF APPEALS
TYLER, TEXAS
12/1/2015 10:57:34 AM
Pam Estes
CLERK

**NO ORAL ARGUMENT REQUESTED**

CAUSE NO. 12-15-00186-CR

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
12/1/2015 10:57:34 AM
PAM ESTES
Clerk

IN THE
COURT OF APPEALS
TWELFTH DISTRICT OF TEXAS
TYLER, TEXAS

---

LONNIE LYNN JOHNSON
Appellant

vs.

THE STATE OF TEXAS,
Appellee

---

Appeal in Cause No. 31675
On Appeal from the Third Judicial District Court
of Anderson County, Texas

---

BRIEF FOR APPELLANT

---

Philip C. Fletcher
Texas Bar No. 00787478
800 North Mallard
Palestine, Texas 75801
Telephone No.: (903) 731-4440
Facsimile No.: (903) 731-4474
Email: fletchlaw@yahoo.com
ATTORNEY FOR APPELLANT

# TABLE OF CONTENTS

PAGE NO.

Table of Contents...............................................................................................2

List of Authorities..............................................................................................3

Appearances....................................................................................................4

Address to the Court...........................................................................................5

Statement of the Case.........................................................................................6

Issues Presented................................................................................................7

Statement of Facts.............................................................................................8

Summary of the Argument, Point of Error Number One...........................................20

Summary of the Argument, Point of Error Number Two............................................21

Argument, Point of Error Number One...................................................................22

Argument, Point of Error Number Two...................................................................26

Prayer.............................................................................................................28

Certificate of Compliance - Texas Rules of Appellate Procedure 9.4 (i) (3) 14..............29

Certificate of Service..........................................................................................30

# LIST OF AUTHORITIES

**CASES:**                                                                                                PAGE NO.

*Amador v. State*, 221 S.W.3d 666 (Tex.Crim.App. 2007)................................................22

*Guitierrez v. State*, 221 S.W.3d 680 (Tex.Crim.App. 2007)..........................................22

*Levi v. State*, 147 S.W.3d 541 (Tex. App.-Waco 2004, pet. ref'd)................................23

*Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966)..............................................26

*Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682 (1980)........................................27

*Rodriguez v. United States*, 575 U.S. ___, 135 S.Ct. 1609 (2015)...........................*23, 24*

*Saldivar v. State*, 209 S.W.3d 275 (Tex. App-Fort Worth 2006, no pet.) (mem. op.).....*23*

*Wolf V. State*, 917 S.W.2d 270 (Tex.Crim.App. 1996)..................................................26


**STATUTES:**                                                                                              PAGE NO.


Texas Code of Criminal Procedure Article 15.21 .........................................................26

Texas Code of Criminal Procedure Article 15.22 .........................................................26

Texas Code of Criminal Procedure Article 38.21 .........................................................26

Texas Code of Criminal Procedure Article 38.22 .........................................................26

Texas Constitution, Article I Sec. 19, Texas Due Process Clause...............................26

United States Constitution, Fifth Amendment...............................................................26

United States Constitution, Fourth Amendment............................................................22

# APPEARANCES

Pursuant to *Rule 38.1 (a)*, Texas Rules of Appellate Procedure, Appellate provides a complete list of all parties and names and addresses of Counsel:

Trial Defendant:                    LONNIE LYNN JOHNSON

Trial Defendant's Counsel:          JEFF HERRINGTON
                                    Attorney at Law
                                    617 East Lacy Street, Suite 106
                                    Palestine, Texas 75801-2965
                                    Telephone:   (903) 723-1923
                                    Facsimile:   (903) 723-0269

                                    STEVE EVANS
                                    Attorney at Law
                                    617 East Lacy Street, Suite 106
                                    Palestine, Texas 75801-2965
                                    Telephone:   (903) 723-1923
                                    Facsimile:   (903) 723-0269

Trial State's Counsel:              ALLYSON MITCHELL & SCOTT HOLDEN
                                    Anderson County District Attorney
                                    500 North Church Street
                                    Palestine, Texas 75801
                                    Telephone:(903) 723-7400
                                    Facsimile:   (903) 723-7818

Appellant:                          LONNIE LYNN JOHNSON

Appellant's Counsel:                PHILIP C. FLETCHER
                                    Attorney at Law
                                    800 North Mallard Street
                                    Palestine, Texas 75801
                                    Telephone:   (903) 731-4440
                                    Facsimile:   (903) 731-4474

Appellee's Counsel:                 ALLYSON MITCHELL & SCOTT HOLDEN
                                    Anderson County District Attorney's Office
                                    500 North Church Street
                                    Palestine, Texas 75801
                                    Telephone:(903) 723-7400
                                    Facsimile:   (903) 723-7818

CAUSE NO. 12-15-00186-CR


IN THE
COURT OF APPEALS
TWELFTH DISTRICT OF TEXAS
TYLER, TEXAS

---

LONNIE LYNN JOHNSON
Appellant

vs.

THE STATE OF TEXAS,
Appellee

---

Appeal in Cause No. 31675
On Appeal from the Third Judicial District Court
of Anderson County, Texas

---

BRIEF FOR APPELLANT

---

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

COMES NOW, LONNIE LYNN JOHNSON, hereinafter referred to as Appellant, and submits this Brief in support of the Appellant's request that judgment rendered in Cause Number 31675 be reversed.

## STATEMENT OF THE CASE

Appellant was indicted in Cause Number 31675 with the offenses of Felon in Possession of a Firearm, Felon in Possession of Body Armor and Impersonating a Public Servant. This offense was alleged to have occurred on January 12, 2014, in Anderson County, Texas. Appellant pled not guilty to these charges. On June 29, 2015, Appellant changed his plea to guilty and was sentenced to thirty (30) years in the Texas Department of Criminal Justice - Institutional Division. The Court certified Appellant's right to appeal any pre-trial motions. On July 21, 2015, Appellant timely gave his Notice of Appeal to this Honorable Court. Appellant now timely files this Brief in support of the Appellant's request that the judgment rendered in Cause Number 31675 be reversed.

## ISSUES PRESENTED

**Point of Error Number One**: The Trial Court abused its discretion in allowing the admission of evidence in violation of Appellant's Fourth Amendment right against unreasonable searches and seizures.

**Point of Error Number Two**: The Trial Court abused its discretion in allowing the admission of certain statements of Appellant that were made while Appellant was in custody in violation of his Fifth Amendment right against self-incrimination.

## STATEMENT OF FACTS

On October 3, 2014 the Court heard Appellant's Motion to Suppress. This was reported by Brandi Ray in Volume 1. The State called its first witness, Rob Sadowski, a Texas Game Wardens and Texas Parks and Wildlife Department officer. Officer Sadowski had received a call from the Anderson County Sheriff's Office that a vehicle was stuck in the sand at Gus Engeling Wildlife Management Area, a public area. (R.R. Vol. 1, Pgs. 5-6) Officer Sadowski explained that you are allowed to enter the property with a valid permit. There are two entry points that are gated. A paved road allows through traffic when it is opened. Officer Sadowski was dispatched to Lonnie Johnson, who was at the end of a dirt road that ended at the catfish creek bottom. Officer Sadowski arrived with Officer Danny Kessel who was in his own patrol vehicle. (R.R. Vol. 1, Pgs. 6-8)

Upon arriving and meeting Mr. Lonnie Johnson, Officer Sadowski asked for Appellant's driver's license and ran it through the Anderson County Sheriff's Office. It came back that Appellant was a convicted felon. Officer Sadowski then asked Appellant for his entry permit. Appellant was unable to produce a valid permit. At that time, Officer Sadowski asked to search Appellant's vehicle and was given consent. (R.R. Vol. 1, Pg. 9) Officer Sadowski began searching Appellant's vehicle and found camouflage clothing, a black duffle bag, a fishing pole, and other miscellaneous outdoor equipment; Officer Kessel found prescription medication. Officer Sadowski asked what was in the duffle bag and could he search it. Appellant stated it was his work stuff and gave Officer Sadowski permission to search the bag. Officer Sadowski located a M4-type assault rifle, a type 3A point blank body armor, a military style fight jacket, one long-sleeved cotton T-shirt that said "Police" on it, one short-sleeved T-shirt that said "Police" on it, a 22 New England

8

firearms revolver, and a 38 Rossi revolver, along with miscellaneous other tactical police equipment. (R.R. Vol. 1, Pgs. 10-12)

Officer Sadowski then placed Appellant in handcuffs. At that time, Appellant stated that he was an undercover officer for the Tarrant County Sheriff's Office. Officer Sadowski continued to search the vehicle and found 9-millimeter hidden in the compartment in the trunk, a white chemical type suit along with rubber gloves, and sharpening stone for a knife. Appellant continued to state that he worked undercover for the Tarrant County Sheriff's Office and that he worked under Captain Bailey. Officer Sadowski had Anderson County Sheriff's Office contact Tarrant County Sheriff's Office and was advised that there was not a Captain Bailey that worked for them. The next morning Officer Sadowski received a call from his game warden lieutenant who is in Tarrant County, and his brother woks for Tarrant County Sheriff's Office, and he was unable to confirm that there was a Captain Bailey that ever was employed by the Tarrant County Sheriff's Office. (R.R. Vol. 1, Pgs. 12-13) Appellant stated that he received the equipment from the Tarrant County Sheriff's Office to assist in raids. Officer Sadowski asked Appellant for his PID number, a number that is given to all peace officers, and Appellant stated he did not have one. At that time Officer Kessel placed Appellant under arrest and read him his Miranda rights in the patrol car. Appellant's cell phone was seized and a search warrant was issued to next morning to search his cell phone. (R.R. Vol. 1, Pgs. 13-14)

During cross examination, Officer Sadowski stated that the entry gate was unmanned and the rules and regulations were posted at the entry station. He was asked if the permits that are required were available at the entry point. Officer Sadowski stated

9

that they are available where you purchase hunting and fishing licenses. He further stated that it is a class C misdemeanor fine only offense. (R.R. Vol. 1, Pgs. 14-15)

Officer Sadowski was unable to give an exact time of the call because he was out of service when he received the call. He was aware that Appellant contacted Anderson County Sheriff's Office himself for assistance. Officer Kessel spoke with Appellant on his phone to get his exact location. According to the 911 call made, Appellant called at approximately 5:00 p.m.. Officer Sadowski stated that he and his partner, Officer Kessel, had to go to Mount Pleasant to pick up a truck. He stated he received the call on the way back. Officer Sadowski did not know exactly what time they arrived at the wildlife area, however, he agreed with his partner's report that it was approximately 6:00 p.m.. Officer Sadowski arrived with Officer Kessel and made contact with Appellant and his wife. (R.R. Vol. 1, Pgs. 15-17)

Officer Sadowski stated that it was dark when they arrived. He felt like it was suspicious that a newer model Mercedes Benz was stuck in the sand in an out of reach place. He stated that the property is used primarily to hunt, however, a person could get a limited use permit to just enjoy nature or bird watch. Officer Sadowski stated that the reason he felt Appellant actions were suspicious was because he made a statement about this being the second time he had gotten stuck in the past few days. This statement was the reason Officer Sadowski thought the situation was suspicious. (R.R. Vol. 1, Pgs. 18-20) Once again, Officer Sadowski testified that he asked Appellant for his driver's license upon arriving at the wildlife area. He also stated that Appellant, at this time, was not under arrest and Officer Sadowski did not have a search warrant. He ran his license with the Anderson County Sheriff's Office and was notified that Appellant was a convicted felon.

10

Officer Sadowski admitted that it was not against the law for Appellant to be in the wildlife area, but it was suspicious to Officer Sadowski that he was a convicted felon. That is why he asked to search the vehicle. Officer Sadowski asked why they were in the wildlife area and Appellant stated they were just driving through, however, he was on a dead end road. The officer did not ask Appellant if this was his first time in the wildlife area. During the approximately thirty minutes prior to Officer Sadowski asking to search Appellant's vehicle, both officers had pushed the car out of the sand and it was no longer stuck. (R.R. Vol. 1, Pgs. 20-21)

Officer Sadowski testified that he did not issue Appellant a citation for being in the wildlife area without a permit. A warning was issued to Appellant prior to Officer Sadowski asking to search his vehicle. He admitted to doing a visual search of the vehicle but there were several things in the back seat and he wanted to look closer. Officer Sadowski asked Appellant, "Would you mind if I looked in your car?" According to Officer Sadowski, Appellant said, "Go ahead." Officer Sadowski testified that they began the search in the vehicle and Officer Kessel located prescription medication. Then they moved to the trunk of the vehicle. (R.R. Vol. 1, Pgs. 22-23) Once in the trunk, Officer Sadowski found some camouflage clothing that he thought was suspicious and a black duffle bag. He asked to look in the duffle bag and according to Officer Sadowski, Appellant said, "Go ahead." Once Officer Sadowski opened the duffel bag, he found a M4 type assault rifle, later to be identified as an Airsoft rifle, a plastic toy gun. He also located some body armor and placed Appellant in handcuffs, detaining him. Once Officer Sadowski detained Appellant, he stated he was an undercover peace officer so Officer Sadowski started asking questions. (R.R. Vol. 1, Pgs. 24-26)

11

Officer Sadowski testified that his vehicle does not have any video or audio recording. He did not have a personal recording device either. Once detained, Officer Sadowski stated that he began questioning Appellant about the guns. Officer Sadowski admitted that he has not read Appellant his Miranda rights at this time. At approximately 8:00 p.m., once Appellant was placed in the patrol car, Officer Kessel placed Appellant under arrest and reads him his Miranda rights. (R.R. Vol. 1, Pgs. 26-27) Officer Sadowski reviewed an exhibit and testified that it is a book-in sheet from the Anderson County Sheriff's Office. It showed contact made at 8:00 p.m. and Officer Sadowski believes that is the time Appellant was placed under arrest. Additionally, Officer Sadowski testified that he searched the passenger compartment first and then the trunk. However, after reviewing his report, he believed his memory had mistaken him and in fact he searched the trunk first and the passenger portion second. (R.R. Vol. 1, Pgs. 27-28)

Officer Sadowski stated that anything said between Appellant and himself was not recorded, the only evidence of anything said was in Officer Sadowski's report. Appellant did not write a statement. (R.R. Vol. 1, Pg. 29)

The state asked Officer Sadowski if it was unusual for people to illegally hunt in that area, and he replied, "It happens on a regular basis." He also stated that it is not unusual to catch people out there fishing without the limited use permit. (R.R. Vol. 1, Pg. 30) On re-cross examination, Officer Sadowski clarified that he did not get written consent from Appellant to search his vehicle, only verbal. (R.R. Vol. 1, Pg. 31)

The defense called Ms. Sharmin Jaham, Appellant's ex-wife. Ms. Jaham testified that she has a master's degree in business management from the University of Bangladesh. She stated she has lived here for many years, has family here, and a son

12

that attends the University of Texas. Ms. Jaham advised that at the time of the arrest she was with Lonnie Johnson at the wildlife area. Ms. Jaham testifies that on the day Appellant was arrested, they were on their way back to Dallas from Lufkin and had just stopped at a paid park to enjoy the day and take some pictures. She and Appellant were back on the road to Dallas; she saw the wildlife area and wanted to stop, so he took her there. Ms. Jaham stated that they do this often, almost every weekend. She wanted to see an alligator so they pulled into the wildlife area. She said they thought it was a paid park too but could not find anyone to pay. There was no one at the entry gate. They could not find anyone to pay or instructions for a permit. They did find a registration card, filled it out, and placed one half in the box and the other half in the dash, and continued to the creek area. Ms. Jaham stated they arrived at around 4:15-4:30 p.m. and took some pictures. Once they were ready to leave, they realized the car was stuck. She stated that her husband, Appellant, called 9-1-1 at approximately 4:40-4:45 p.m. and they waited over an hour for assistance. (R.R. Vol. 1, Pgs. 32-37)

Ms. Jaham stated that once the officers arrived, they asked for Appellant's driver's license and insurance and her driver's license. She stated that Officer Sadowski took the information to his patrol car and came back with a flashlight and was searching the car. She testified that at that time Officer Kessel pulled Appellant's vehicle out with his truck and stated they needed a permit to be in that area. Ms. Jaham clarified that the two officers did not push the vehicle out of the sand, but that Officer Kessel pulled it out with his patrol truck and some rope or cable attached to the vehicle. She stated that once the car was unstuck Officer Sadowski starting searching the vehicle with his flashlight through the windows. (R.R. Vol. 1, Pgs. 37-38) Ms. Jaham stated that Officer Sadowski saw a

13

bottle and asked what was in it and they told him it was a protein drink. He asked to see it. So, Appellant handed it to him, and he smelled it and handed it back. Ms. Jaham then stated that he started asking questions about their clothes and personal hygiene products. She said he was very suspicious from the beginning. She then testified that Officer Sadowski took her to the side and asked her how long she has known Appellant. She stated that at that time she and Appellant had been married from three and half months. Ms. Jaham stated that Officer Sadowski turns to Appellant and asked him questions. She heard him ask Appellant if he had any firearms with him. The next thing she heard Officer Sadowski say is, "Open your trunk." (R.R. Vol. 1, Pg. 39)

Ms. Jaham stated that Officer Kessel explained to them they needed a permit; but since they did not know about the requirement, he would give them a warning. However, if they wanted to come back, they would need a permit. She and Appellant asked him where to get one, and he advised Wal-Mart or some place like that. Ms. Jaham testified that Officer Sadowski never asked Appellant or herself permission to search their vehicle, instead he ordered Appellant to open the trunk. Ms. Jaham further testified that once Officer Sadowski started searching the vehicle, Officer Kessel took her away from the vehicle and had her stand by the patrol car. She was not able to really see what was taking place, however, she saw Officer Sadowski press Appellant up against the vehicle and believed that is when he was placed in handcuffs. At that time, they searched her too but found nothing. (R.R. Vol. 1, Pgs. 40-41)

On cross examination, Ms. Jaham stated that she is no longer married to Appellant. However, at the time, she was married to him. She later filed for an annulment for citizenship purposes. (R.R. Vol. 1, Pg. 42) Ms. Jaham stated that once Officer Sadowski

14

ordered her husband to open the trunk, Officer Kessel asked her to come stand by his patrol vehicle. Ms. Jaham testifies that Appellant had told her that he worked for Tarrant County Sheriff's Office as an undercover informant. She stated that she knew he was a convicted felon. When asked about their marriage, Ms. Jaham advised they were trying to buy a house and start their new life together. The State asked Ms. Jaham if the only thing Officer Sadowski didn't tell the truth about was ordering Appellant to open the trunk, and she answered he also did not tell the truth about the signs regarding the permit. She continued to say that maybe he was confused, but she was not. (R.R. Vol. 1, Pgs. 44-47)

Lonnie Johnson is called next to testify. Appellant stated that he and his wife had been on a weekend getaway and they stopped at Gus Engeling. Appellant said that they just went in maybe a mile and a half, and took some pictures. He stated they stopped at the entry gate, filled out a registration card, and wrote they were there for bird and wildlife watching. They dropped the perforated card in the box, kept the other half, and placed it in the dashboard area of their vehicle. Appellant stated they looked for signs regarding fees, etc. because they had just visited Ratcliff Park, where a fee is charged. He stated they did not see anything indicating a fee, so they continued into the park to the Catfish Creek area to take come pictures. Appellant said he noticed the loose sand and he was afraid that the gate would close at dusk so they turned around and got stuck. Once he noticed they were stuck, he called 9-1-1 to get assistance with a wrecker service. (R.R. Vol. 1, Pgs. 48-49)

Appellant testified that he called 9-1-1 at approximately 4:45-5:00 p.m.. He stated that he gave them his cell phone number as a contact and the coordinates of their location.

15

Appellant said that the officer called and asked what side of the road they were on. He stated that two officers showed up in two separate vehicles, Game Warden Rob Sadowski and Game Warden Danny Kessel. (R.R. Vol. 1, Pg. 50) When the officers arrived, Appellant stated that he walked up to them, introduced himself, and kind of laughed about the situation he got himself into. Appellant stated that while he and Officer Kessel were evaluating the situation, Officer Sadowski asked for his driver's license and proof of insurance and Ms. Jaham's identification. Appellant and Officer Kessel went back to working on getting the chain hooked into the front of the vehicle. Officer Sadowski approached and asked Appellant what they were doing there. Appellant testified that Officer Kessel had not pulled the car out with a chain yet when Officer Sadowski asked why they were there. Appellant advised him that they were there to take pictures and enjoy the scenery. Appellant stated that he never received a citation for not having a permit. He said that once Officer Kessel said anything to them about it, they explained that they did not see anything about having a permit and had filled out the registration card at the entry gate. Appellant stated that as Officer Kessel was headed back to his vehicle to pull the car out, Officer Sadowski began shining his flashlight in their vehicle looking around. Officer Sadowski asked Appellant about the protein drink mix in the back seat of the floorboard of the vehicle. Appellant testified that then he got in his vehicle to assist Officer Kessel in pulling his vehicle out of the sand. Appellant states that once he got out of his vehicle, Officer Sadowski asked him if he had any firearms in the car and ordered him to open his trunk, stating he wanted to make sure he did not have a dead deer or turkey in the trunk. (R.R. Vol. 1, Pgs. 50-53)

16

Appellant testified that he was never asked to search his vehicle and that he interpreted what Officer Sadowski said as a direct order. Appellant further explained that he felt like he had to comply because it was a law enforcement officer. At that time, Appellant opened the trunk. He said that Officer Sadowski started rummaging through their weekend belongings in the trunk. Appellant stated at that time Officer Kessel shined his flashlight in the trunk and asked what was in the duffle bag. Appellant said that he was asked what was in the duffle bag and he replied, "Clothes." Officer Sadowski took the bag out of the vehicle and opened it. Appellant stated he was not asked permission to look in the duffle bag, and he did not give permission. Appellant testified that once Officer Sadowski looked at the contents of the bag he told Appellant he was under arrest. Appellant stated that he was placed in handcuffs but was not read his Miranda rights. However, he did not feel like he could leave. (R.R. Vol. 1, Pgs. 54-56)

Appellant testified that he was not aware of any audio or video recordings and he had not seen anything in writing that lead him to believe there were any recordings. At that time, Appellant stated that Officer Sadowski began his questioning. Appellant clarified that he never gave consent for the officers to search his vehicle and was never presented with a search or arrest warrant. (R.R. Vol. 1, Pgs. 56-57)

During cross-examination, Appellant admitted that he has a felony record and is on parole until 2039. Appellant admitted that to an officer it may look suspicious that a Mercedes stuck in the sands of a river bottom, however, there was nothing suspicious and they were not acting suspicious. Appellant stated that when the officer asked about the dead deer or turkey in the trunk, he thought they were kind of joking. They were not dressed for hunting, and they looked like a couple or family out enjoying the wildlife area.

17

Appellant stated again that he was asked if there were any firearms in the vehicle, and that he was not asked for consent to search the vehicle. (R.R. Vol. 1, Pgs. 57-58)

Appellant clarified that when Officer Sadowski asked him about the camouflage clothes, he did not reply. Appellant confirmed that there was a fishing pole in the car, and that they had gotten stuck a month prior in Trinity County sightseeing. Appellant stated that he never told the officers he was an undercover officer. He said he told them he was a covert confidential informant. Appellant clarified that he would not claim to be employed by Tarrant County Sheriff's Department when he knew that could be verified. Appellant stated they asked him who his handler was, and he replied Captain Jay Bailey. (R.R. Vol. 1, Pgs. 59-61)

At the conclusion of the hearing, the Court denied Appellant's motion to suppress and signed an order indicating the same. (C.R. Page 47)

On March 2, 2015, a jury was selected in this matter. Appellant was proceeding pro se in this matter. After jury selection, the trial court allowed Appellant to revisit the portion of his motion to suppress relating to his oral statements made while Appellant was being detained. Appellant felt that the court had never ruled on that portion of the motion. Officer Sadowski testified at this hearing and basically reiterated his testimony from the previous hearing. At the conclusion of his testimony, Appellant filed a motion to have counsel appointed. The Court did not actually rule on the motion to suppress, but stated that the only reason Appellant wanted counsel again was because he had ruled against Appellant. At the conclusion of this hearing the court recessed until the following day. (Nancy Adam's R.R. Vol. 9)

18

On March 3, 2015, the court reconvened. The court declared a mistrial and appointed Appellant counsel after Appellant asked to have counsel appointed again. The court did not rule on the motion to suppress at this time, but stated that he would allow appointed counsel to reargue it. (Nancy Adam's R.R. Vol. 11)

## SUMMARY OF THE ARGUMENT - POINT OF ERROR ONE

The Trial Court abused its discretion in allowing the admission of evidence in violation of Appellant's Fourth Amendment right against unreasonable searches and seizures.

The Supreme Court of the United States of America has recently ruled without reasonable suspicion the extension of a traffic stop beyond the time needed to complete the stop violates the Fourth Amendment right against unreasonable seizures.

In the case at bar, the Court should find that no consent was given. The Court could choose to believe the testimony of the two witnesses that contradicted the officer's testimony concerning the alleged consent. Therefore the search was illegal because the officer lacked probable cause to conduct a search.

If the Court believes that consent was given, it should find that consent was given in violation of the Fourth Amendment right against unreasonable search and seizure in that consent was obtained after the time needed to complete the initial stop or intervention without reasonable suspicion.

The search of Appellant's vehicle revealed the guns and body armor which were the basis of the charges of possession of a firearm and body armor by a felon. As a result of the court's erroneous ruling, Appellant was forced to plea when faced with the overwhelming fear of a life sentence.

The Trial Court abused its discretion by allowing the admission of evidence in violation of Appellant's Fourth Amendment right against illegal searches and seizures. As a result, this Court must reverse the judgment.

20

## SUMMARY OF THE ARGUMENT - POINT OF ERROR TWO

The Trial Court abused its discretion in allowing the admission of certain statements of Appellant that were made while Appellant was in custody in violation of his Fifth Amendment right against self-incrimination.

An admission or a statement inculpating a declarant but not one which acknowledges guilt made under custodial interrogation by an agent of the State is presumed to be coerced and involuntary and in violation of a person's Fifth Amendment right against self-incrimination unless *Miranda* warnings are given.

In the present case, Appellant was in custody and was the subject of interrogation. The warnings required by Miranda and The Texas Code of Criminal Procedure were never given. Every statement made by Appellant at the scene after he was placed in restraints in response to the interrogatories of the officer are inadmissible and should have been excluded by the Trial Court. The Trial Court abused its discretion by allowing the admission of evidence in violation of Appellant's Fifth Amendment right against self-incrimination. As a result of the denial of his motion to suppress, Appellant was faced with the introduction of this evidence which was the only evidence the State had in support of the Impersonating a Public Servant charge. Faced with the prospect of a possible life sentence, Appellant chose to plea. As a result, this Court must reverse the judgment.

21

## ARGUMENT

## POINT OF ERROR NUMBER ONE

The Trial Court abused its discretion in allowing the admission of evidence in violation of Appellant's Fourth Amendment right against unreasonable searches and seizures.

A ruling on a trial court's motion to suppress evidence based upon an unreasonable search and seizure in violation of the Fourth Amendment of the United States Constitution is reviewed under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666,673 (Tex.Crim.App. 2007). Almost total deference is given to a trial court's ruling on questions of fact that involve an evaluation of the credibility and demeanor of the witnesses, but a trial court's ruling on questions of fact that do not involve an evaluation of the credibility and demeanor of the witnesses are reviewed de novo. *Id.* at 673. The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures by government officials. To suppress evidence obtained in an alleged violation of the Fourth Amendment, a defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Id.* at 672. This burden is satisfied when it is established that a search or seizure occurred without a warrant. *Id.* at 672. If a defendant establishes this fact, the burden shifts to the State to prove that the search or seizure was reasonable. *Id.* at 672-673.

A warrantless search or seizure may be found to be reasonable if a defendant voluntarily consents to the search. *Guitierrez v. State*, 221 S.W.3d 680, 686-88 (Tex.Crim.App. 2007). Some Texas courts have held that an officer may ask for consent

22

to search a defendant or the defendant's vehicle after finishing a traffic stop, without having any reasonable suspicion to do so, just as long as the officer does not convey a message that compliance is required. *See Levi v. State*, 147 S.W.3d 541, 544 (Tex. App.-Waco 2004, pet. ref'd) and *Saldivar v. State*, 209 S.W.3d 275, 278-279 (Tex. App-Fort Worth 2006, no pet.) (mem. op.).

The Supreme Court of the United States of America has recently ruled in *Rodriguez v. United States*, 575 U.S. ___, 135 S.Ct. 1609 (2015), that absent reasonable suspicion, a police extension of a traffic stop beyond the time needed to complete the inquiries that were necessitated by the intervention violates the Fourth Amendment right against unreasonable seizures. In *Rodriguez*, the Court found that prolonging a traffic stop beyond the time reasonably required to complete the traffic stop to conduct a dog sniff required reasonable suspicion to support further detention.

In the case at bar, the Court should find that no consent was given. It is incredulous to believe that Appellant would consent to a search of his vehicle when that search would lead to evidence of possible illegal activity. As stated earlier, great deference is given to the trial court's ruling concerning the demeanor and credibility of witnesses. The trial court heard conflicting testimony from the officer who allegedly asked for consent to search, Appellant, and Appellant's wife. It strains belief that Appellant would initiate contact with law enforcement and then consent to a search of his vehicle. This Court should find that no consent was given. Therefore the search was illegal because the officer lacked probable cause to conduct a search.

If the Court believes that consent was given, it should find that consent was given in violation of the Fourth Amendment right against unreasonable search and seizure in that

23

consent was obtained after the time needed to complete the initial stop or intervention. In the present case Appellant had initiated the contact with law because his vehicle was stuck. After arriving to help, law enforcement officers determined that Appellant did not have a permit to be on the wildlife management area. After extricating Appellant's vehicle from the sand, a warning for being on the wildlife management area without a permit was issued to Appellant. It was after the time necessary to complete the mission of the initial traffic stop or intervention that law enforcement allegedly asked for consent to search the vehicle. As the Supreme Court has ruled in *Rodriguez*, reasonable suspicion that evidence of illegal activity will be found is necessary to prolong a stop beyond the time reasonably required to complete the original mission. There was no testimony elicited in the Motion to Suppress hearings that indicated that the officer had a reasonable suspicion to ask for consent to search. The only reasons given for the request were that it was a late model Mercedes, it was on a back road, Appellant was a convicted felon, and Appellant said he had gotten stuck before. None of these reasons give rise to reasonable suspicion to extend the stop past the original mission and the issuance of the warning and ask for consent to search Appellant's vehicle.

The search of Appellant's vehicle revealed the guns and body armor which were the basis of the charges of possession of a firearm and body armor by a felon. Without the fruits of this illegal search and seizure, the State would have been unable to prove the allegations for the offenses of Possession of a Firearm by a Felon and Possession of Body Armor by a Felon. As a result of the court's erroneous ruling, Appellant was forced to plea when faced with the overwhelming fear of a life sentence.

24

The Trial Court abused its discretion by allowing the admission of evidence in violation of Appellant's Fourth Amendment right against illegal searches and seizures. As a result, this Court must reverse the judgment.

## ARGUMENT

## POINT OF ERROR NUMBER TWO

The Trial Court abused its discretion in allowing the admission of certain statements and responses of Appellant in violation of his Fifth Amendment right against self-incrimination.

An admission or a statement inculpating a declarant but not one which acknowledges guilt made under custodial interrogation by an agent of the State is presumed to be coerced and involuntary and in violation of a person's Fifth Amendment right against self-incrimination unless *Miranda* warnings are given. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602 (1966). *Miranda* warnings find constitutional support in the Texas Constitution. Article I Sec. 19, Texas Due Process Clause states that " No citizen of this State shall be deprived of life, liberty, property,   privileges or immunities, or in any manner disenfranchised, except by the due course of the law of the land." *See Wolf V. State*, 917 S.W.2d 270 (Tex.Crim.App. 1996). Furthermore the Texas Code of Criminal Procedure Article 38.21 states that a statement of an accused cannot be admitted unless it can be shown "that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed." These rules mentioned are found in Article 15.17 and Article 38.22 of the Texas Code of Criminal Procedure. They basically require the same warnings found in *Miranda*.

Before these warnings are required, an individual must be in custody and the subject of interrogation. Article 15.22 of the Texas Code of Criminal Procedure says that

an individual "is arrested when he as been actually placed under restraint or taken into custody by an officer or person executing a warrant of arrest, or by an officer or person arresting without a warrant." Interrogation is express questioning or actions intended to elicit a response. *Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682 (1980).

In the present case, Appellant was in custody. He had been placed in restraints. Appellant was also the subject of interrogation. He was subjected to a "field interview" by the officer who had restrained him. The warnings required by Miranda and The Texas Code of Criminal Procedure were never given. Every statement or response given by Appellant at the scene after being placed in restraints are inadmissible and should have been excluded by the Trial Court.

Appellant's statements and responses to the field interview were the basis for the charge of Impersonating a Public Servant. Without this improperly admitted evidence, the State would not have been able to meet their burden of proof in this matter. As a result of the denial of his motion to suppress, Appellant was faced with the introduction of this evidence which was the only evidence the State had in support of the Impersonating a Public Servant charge. Faced with the prospect of a possible life sentence, Appellant chose to plea.

The Trial Court abused its discretion by allowing the admission of evidence in violation of Appellant's Fifth Amendment right against self-incrimination. As a result, this Court must reverse the judgment.

## PRAYER

For the above and foregoing reasons, Appellant prays that Appellant's conviction in Cause No. 12-15-00186-CR, appealed in Cause No. 31675 from the Third Judicial District Court of Anderson County, Texas, be reversed.

Respectfully submitted,

PHILIP C. FLETCHER
Attorney for Appellant

## CERTIFICATE OF COMPLIANCE
## TEXAS RULES OF APPELLATE PROCEDURE 9.4(i)(3)

I certify that according to the Microsoft Word program's word-count function, the brief filed in this matter contains 5,550 words excluding the caption, identity of parties and counsel, table of contents, index of authorities, statement of the case, statement of issues presented, signature, proof of service, certification and certificate of compliance.

Respectfully submitted,

PHILIP C. FLETCHER
800 North Mallard
Palestine, Texas 75801
Tel: (903) 731-4440
Fax: (903) 731-4474

By: _____
PHILIP C. FLETCHER
State Bar No. 00787478
Attorney for Appellant

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Brief has been Hand Delivered to Allyson Mitchell and Scott Holden, Anderson County Criminal District Attorney's Office, Attorney for Appellee, Anderson County Courthouse, 500 North Church Street, Palestine, Texas 75801, on this the 30th day of November, 2015.

PHILIP C. FLETCHER

30