Justice GINSBURGdelivered the opinion of the Court.
In Illinois v. Caballes,543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), this Court held that a dog sniff conducted during a lawful traffic stop does not violate the Fourth Amendment's proscription of unreasonable seizures. This case presents the question whether the Fourth Amendment tolerates a dog sniff conducted after completion of a traffic stop. We hold that a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures. A seizure justified only by a police-observed traffic violation, therefore, "become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket for the violation. Id., at 407, 125 S.Ct. 834. The Court so recognized in Caballes,and we adhere to the line drawn in that decision.
I
Just after midnight on March 27, 2012, police officer Morgan Struble observed a Mercury Mountaineer veer slowly onto the shoulder of Nebraska State Highway 275 for one or two seconds and then jerk back onto the road. Nebraska law prohibits driving on highway shoulders, see Neb.Rev.Stat. § 60-6,142 (2010), and on that basis, Struble pulled the Mountaineer over at 12:06 a.m. Struble is a K-9 officer with the Valley Police Department in Nebraska, and his dog Floyd was in his patrol car that night. Two men were in the Mountaineer: the driver, Dennys Rodriguez, and a front-seat passenger, Scott Pollman.
*1613 Struble approached the Mountaineer on the passenger's side. After Rodriguez identified himself, Struble asked him why he had driven onto the shoulder. Rodriguez replied that he had swerved to avoid a pothole. Struble then gathered Rodriguez's license, registration, and proof of insurance, and asked Rodriguez to accompany him to the patrol car. Rodriguez asked if he was required to do so, and Struble answered that he was not. Rodriguez decided to wait in his own vehicle.
After running a records check on Rodriguez, Struble returned to the Mountaineer. Struble asked passenger Pollman for his driver's license and began to question him about where the two men were coming from and where they were going. Pollman replied that they had traveled to Omaha, Nebraska, to look at a Ford Mustang that was for sale and that they were returning to Norfolk, Nebraska. Struble returned again to his patrol car, where he completed a records check on Pollman, and called for a second officer. Struble then began writing a warning ticket for Rodriguez for driving on the shoulder of the road.
Struble returned to Rodriguez's vehicle a third time to issue the written warning. By 12:27 or 12:28 a.m., Struble had finished explaining the warning to Rodriguez, and had given back to Rodriguez and Pollman the documents obtained from them. As Struble later testified, at that point, Rodriguez and Pollman "had all their documents back and a copy of the written warning. I got all the reason[s] for the stop out of the way[,] ... took care of all the business." App. 70.
Nevertheless, Struble did not consider Rodriguez "free to leave." Id.,at 69-70. Although justification for the traffic stop was "out of the way," id.,at 70, Struble asked for permission to walk his dog around Rodriguez's vehicle. Rodriguez said no. Struble then instructed Rodriguez to turn off the ignition, exit the vehicle, and stand in front of the patrol car to wait for the second officer. Rodriguez complied. At 12:33 a.m., a deputy sheriff arrived. Struble retrieved his dog and led him twice around the Mountaineer. The dog alerted to the presence of drugs halfway through Struble's second pass. All told, seven or eight minutes had elapsed from the time Struble issued the written warning until the dog indicated the presence of drugs. A search of the vehicle revealed a large bag of methamphetamine.
Rodriguez was indicted in the United States District Court for the District of Nebraska on one count of possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1)and (b)(1). He moved to suppress the evidence seized from his car on the ground, among others, that Struble had prolonged the traffic stop without reasonable suspicion in order to conduct the dog sniff.
After receiving evidence, a Magistrate Judge recommended that the motion be denied. The Magistrate Judge found no probable cause to search the vehicle independent of the dog alert. App. 100 (apart from "information given by the dog," "Officer Struble had [no]thing other than a rather large hunch"). He further found that no reasonable suspicion supported the detention once Struble issued the written warning. He concluded, however, that under Eighth Circuit precedent, extension of the stop by "seven to eight minutes" for the dog sniff was only a de minimisintrusion on Rodriguez's Fourth Amendment rights and was therefore permissible.
The District Court adopted the Magistrate Judge's factual findings and legal conclusions and denied Rodriguez's motion to suppress. The court noted that, in the Eighth Circuit, "dog sniffs that occur within a short time following the completion of *1614 a traffic stop are not constitutionally prohibited if they constitute only de minimis intrusions." App. 114 (quoting United States v. Alexander,448 F.3d 1014, 1016 (C.A.8 2006)). The court thus agreed with the Magistrate Judge that the "7 to 10 minutes" added to the stop by the dog sniff "was not of constitutional significance." App. 114. Impelled by that decision, Rodriguez entered a conditional guilty plea and was sentenced to five years in prison.
The Eighth Circuit affirmed. The "seven- or eight-minute delay" in this case, the opinion noted, resembled delays that the court had previously ranked as permissible. 741 F.3d 905, 907 (2014). The Court of Appeals thus ruled that the delay here constituted an acceptable "de minimisintrusion on Rodriguez's personal liberty." Id.,at 908. Given that ruling, the court declined to reach the question whether Struble had reasonable suspicion to continue Rodriguez's detention after issuing the written warning.
We granted certiorari to resolve a division among lower courts on the question whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff.573 U.S. ----, 135 S.Ct. 43, 189 L.Ed.2d 896 (2014). Compare, e.g., United States v. Morgan,270 F.3d 625, 632 (C.A.8 2001)(postcompletion delay of "well under ten minutes" permissible), with, e.g., State v. Baker,2010 UT 18, ¶ 13, 229 P.3d 650, 658 (2010)("[W]ithout additional reasonable suspicion, the officer must allow the seized person to depart once the purpose of the stop has concluded.").
II
A seizure for a traffic violation justifies a police investigation of that violation. "[A] relatively brief encounter," a routine traffic stop is "more analogous to a so-called 'Terrystop' ... than to a formal arrest." Knowles v. Iowa,525 U.S. 113, 117, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998)(quoting Berkemer v. McCarty,468 U.S. 420, 439, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), in turn citing Terry v. Ohio,392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). See also Arizona v. Johnson,555 U.S. 323, 330, 129 S.Ct. 781, 172 L.Ed.2d 694 (2009). Like a Terrystop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's "mission"-to address the traffic violation that warranted the stop, Caballes,543 U.S., at 407, 125 S.Ct. 834and attend to related safety concerns, infra,at 1619 - 1620. See also United States v. Sharpe,470 U.S. 675, 685, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); Florida v. Royer,460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)(plurality opinion) ("The scope of the detention must be carefully tailored to its underlying justification."). Because addressing the infraction is the purpose of the stop, it may "last no longer than is necessary to effectuate th[at] purpose." Ibid.See also Caballes,543 U.S., at 407, 125 S.Ct. 834. Authority for the seizure thus ends when tasks tied to the traffic infraction are-or reasonably should have been-completed. See Sharpe,470 U.S., at 686, 105 S.Ct. 1568(in determining the reasonable duration of a stop, "it [is] appropriate to examine whether the police diligently pursued [the] investigation").
Our decisions in Caballesand Johnsonheed these constraints. In both cases, we concluded that the Fourth Amendment tolerated certain unrelated investigations that did not lengthen the roadside detention. Johnson,555 U.S., at 327-328, 129 S.Ct. 781(questioning);Caballes,543 U.S., at 406, 408, 125 S.Ct. 834(dog sniff). In Caballes,however, we cautioned that a traffic stop "can become unlawful *1615 if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a warning ticket. 543 U.S., at 407, 125 S.Ct. 834. And we repeated that admonition in Johnson: The seizure remains lawful only "so long as [unrelated] inquiries do not measurably extend the duration of the stop." 555 U.S., at 333, 129 S.Ct. 781. See also Muehler v. Mena,544 U.S. 93, 101, 125 S.Ct. 1465, 161 L.Ed.2d 299 (2005)(because unrelated inquiries did not "exten[d] the time [petitioner] was detained[,] ... no additional Fourth Amendment justification ... was required"). An officer, in other words, may conduct certain unrelated checks during an otherwise lawful traffic stop. But contrary to Justice ALITO's suggestion, post, at 1625, n. 2, he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual. But see post,at 1623 - 1624 (ALITO, J., dissenting) (premising opinion on the dissent's own finding of "reasonable suspicion," although the District Court reached the opposite conclusion, and the Court of Appeals declined to consider the issue).
Beyond determining whether to issue a traffic ticket, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." Caballes,543 U.S., at 408, 125 S.Ct. 834. Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. See Delaware v. Prouse,440 U.S. 648, 658-660, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). See also 4 W. LaFave, Search and Seizure § 9.3(c), pp. 507-517 (5th ed. 2012). These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly. See Prouse,440 U.S., at 658-659, 99 S.Ct. 1391; LaFave, Search and Seizure § 9.3(c), at 516(A "warrant check makes it possible to determine whether the apparent traffic violator is wanted for one or more previous traffic offenses.").
A dog sniff, by contrast, is a measure aimed at "detect[ing] evidence of ordinary criminal wrongdoing." Indianapolis v. Edmond,531 U.S. 32, 40-41, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000). See also Florida v. Jardines,569 U.S. 1, ---- - ----, 133 S.Ct. 1409, 1416-1417, 185 L.Ed.2d 495 (2013). Candidly, the Government acknowledged at oral argument that a dog sniff, unlike the routine measures just mentioned, is not an ordinary incident of a traffic stop. See Tr. of Oral Arg. 33. Lacking the same close connection to roadway safety as the ordinary inquiries, a dog sniff is not fairly characterized as part of the officer's traffic mission.
In advancing its de minimisrule, the Eighth Circuit relied heavily on our decision in Pennsylvania v. Mimms,434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977)(per curiam). See United States v. $404,905.00 in U.S. Currency,182 F.3d 643, 649 (C.A.8 1999). In Mimms,we reasoned that the government's "legitimate and weighty" interest in officer safety outweighs the "de minimis" additional intrusion of requiring a driver, already lawfully stopped, to exit the vehicle. 434 U.S., at 110-111, 98 S.Ct. 330. See also Maryland v. Wilson,519 U.S. 408, 413-415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997)(passengers may be required to exit vehicle stopped for traffic violation). The Eighth Circuit, echoed in Justice THOMAS's dissent, believed that the imposition here similarly could be offset by the Government's "strong interest in interdicting the flow of illegal drugs along the nation's highways." $404,905.00 in U.S. Currency,182 F.3d, at 649; see post, at 1621.
*1616 Unlike a general interest in criminal enforcement, however, the government's officer safety interest stems from the mission of the stop itself. Traffic stops are "especially fraught with danger to police officers," Johnson,555 U.S., at 330, 129 S.Ct. 781(internal quotation marks omitted), so an officer may need to take certain negligibly burdensome precautions in order to complete his mission safely. Cf. United States v. Holt,264 F.3d 1215, 1221-1222 (C.A.10 2001)(en banc) (recognizing officer safety justification for criminal record and outstanding warrant checks), abrogated on other grounds as recognized in United States v. Stewart,473 F.3d 1265, 1269 (C.A.10 2007). On-scene investigation into other crimes, however, detours from that mission. See supra,at 1615. So too do safety precautions taken in order to facilitate such detours. But cf. post, at 1624 - 1625 (ALITO, J., dissenting). Thus, even assuming that the imposition here was no more intrusive than the exit order in Mimms,the dog sniff could not be justified on the same basis. Highway and officer safety are interests different in kind from the Government's endeavor to detect crime in general or drug trafficking in particular.
The Government argues that an officer may "incremental[ly]" prolong a stop to conduct a dog sniff so long as the officer is reasonably diligent in pursuing the traffic-related purpose of the stop, and the overall duration of the stop remains reasonable in relation to the duration of other traffic stops involving similar circumstances. Brief for United States 36-39. The Government's argument, in effect, is that by completing all traffic-related tasks expeditiously, an officer can earn bonus time to pursue an unrelated criminal investigation. See also post, at 1617 - 1619 (THOMAS, J., dissenting) (embracing the Government's argument). The reasonableness of a seizure, however, depends on what the police in fact do. See Knowles,525 U.S., at 115-117, 119 S.Ct. 484. In this regard, the Government acknowledges that "an officer always has to be reasonably diligent." Tr. of Oral Arg. 49. How could diligence be gauged other than by noting what the officer actually did and how he did it? If an officer can complete traffic-based inquiries expeditiously, then that is the amount of "time reasonably required to complete [the stop's] mission." Caballes,543 U.S., at 407, 125 S.Ct. 834. As we said in Caballesand reiterate today, a traffic stop "prolonged beyond" that point is "unlawful." Ibid.The critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket, as Justice ALITO supposes, post, at 1624 - 1625, but whether conducting the sniff "prolongs"-i.e., adds time to-"the stop," supra,at 1615.
III
The Magistrate Judge found that detention for the dog sniff in this case was not independently supported by individualized suspicion, see App. 100, and the District Court adopted the Magistrate Judge's findings, see id., at 112-113. The Court of Appeals, however, did not review that determination. But see post, at 1617, 1622 - 1623 (THOMAS, J., dissenting) (resolving the issue, nevermind that the Court of Appeals left it unaddressed); post, at 1623 - 1624 (ALITO, J., dissenting) (upbraiding the Court for addressing the sole issue decided by the Court of Appeals and characterizing the Court's answer as "unnecessary" because the Court, instead, should have decided an issue the Court of Appeals did not decide). The question whether reasonable suspicion of criminal activity justified detaining Rodriguez beyond completion of the traffic infraction *1617 investigation, therefore, remains open for Eighth Circuit consideration on remand.
* * *
For the reasons stated, the judgment of the United States Court of Appeals for the Eighth Circuit is vacated, and the case is remanded for further proceedings consistent with this opinion.
It is so ordered.