GREGG COSTA, Circuit Judge,
specially concurring:
It is a close call whether the officers had reasonable suspicion to believe that Spears was involved in drug trafficking, if not at the inception of the stop then at least after his interaction with law enforcement. A brief stop in the driveway of a known drug dealer on a day when there was reason to believe a deal was going down; evasive answers to officers; an apparent misrepresentation about where Spears had been (“visiting a relative” is not consistent with staying inside a vehicle in a driveway) — for the reasons well explained in the majority opinion, standing alone these might not amount to much. But add them together, and things start to get suspicious.
I would not decide the reasonable suspicion question, however,[1] because there is a more straightforward basis for suppressing the evidence obtained during the search of Spears’s vehicle: even if reasonable suspicion of criminal wrongdoing existed, the traffic stop was unreasonably long. Like the street-corner Terry stop on which it is based, a traffic stop supported by reasonable suspicion of wrongdoing must be “temporary and last no longer than is necessary to effectuate the purpose of the stop.” United States v. Brigham, 382 F.3d 500, 507 (5th Cir.2004) (en banc). Indeed, given how common routine traffic stops are, it is lengthy roadside detentions *905 that represent the more unusual and greater intrusion on Fourth Amendment interests. Cf. Rodriguez v. United States, — U.S. -, 135 S.Ct. 1609, 1615-16, 191 L.Ed.2d 492 (2015) (rejecting de minimis rule that would have allowed officers to prolong a stop for just a few minutes while waiting for a canine, to arrive because any unjustified prolonging of stop is unlawful).
The seizure of Spears rose to the level at which those concerns are strong, lasting close to forty minutes before the discovery of the bag of money in Loera’s vehicle prompted the search of Spears’s vehicle. The district court found that this significant length of time did not pose a constitutional problem for two reasons: 1) “the defendant’s resistance to lawful commands”; and 2) the “officer’s diligent efforts to dispatch a canine unit to the scene.” The first is readily dispelled. Spears delayed the weapons pat down by-about a minute and his subsequent transfer to the police car by about two minutes. Both of these events occurred within the first sixteen minutes of the stop, so they cannot be the reason the stop continued for an additional period more than twice that long.
What about the attempts to find a canine, which is often the issue in challenges to the length of a traffic stop? See, e.g., Rodriguez, 135 S.Ct. at 1609; United States v. Pack, 612 F.3d 341, modified on denial of reh’g, 622 F.3d 383 (5th Cir.2010). For starters, some testimony indicates that law enforcement had given up on finding a dog. The local police officer who initiated the stop testified that they “were unable to locate a canine that was available” and had stopped looking. There is evidence suggesting the contrary, however, as a recorded radio communication indicates that at least someone was still “working on getting [ ] one.” This general statement, with no specifics about who was being contacted or when, is still likely enough to support the district court’s factual determination that the officers were still pursuing a canine.
It is the conclusion at the next step of that analysis — that it was reasonable to continue the stop for forty minutes while those unsuccessful attempts to find a canine continued — that runs into a problem. The district court cited Pack to support the length of the stop here, noting that it upheld the reasonableness of a stop lasting just under 35 minutes. But in Pack, the canine arrived at the scene 33 minutes after the stop. Pack, 612 F.3d at 345-46 (stop at 8:45 a.m.; canine arrival at 9:18 a.m.). At that point in this stop, and for a number of minutes that followed, officers were still merely hoping to find a canine.
There is a vast difference between a situation in which a canine has already arrived and one in which a canine has not even been located. In the former, the end of the “reasonable suspicion” stop is in sight. If the dog alerts, there is probable cause. If it does not, the driver should be on his way. In contrast, the latter situation looks like the “indefinite detention” that the low threshold of reasonable suspicion cannot support. Pack, 612 F.3d at 361-62. It is purely speculative that a dog will ever be found, and the odds of finding one are low given that lengthy efforts to locate the dog had thus far proven unsuccessful. Any dog that is found at this late juncture is likely to be far away as it would have been logical for officers to first contact nearby canine units. So even if a canine is finally located at minute 40, or 45, or 50, it would likely be well into the second hour of the stop before the canine arrives.
The 35 minutes it took for the Pack canine to arrive approaches the outer limits of the length of stops that courts generally allow. See United States v. Foreste, *906 780 F.3d 518, 527 (2d Cir.2015) (citing cases that show 30 to 38 minutes as being “the range that this and other courts have found reasonable for similar canine investigations”); United States v. Hardy, 855 F.2d 753, 760 (11th Cir.1988) (50 minutes for dog to arrive reasonable when dog was “immediately” located). . Those cases allowing lengthier stops are ones in which the canine was “on the way” much earlier in the stop. See, e.g., United States v. Schlieve, 159 Fed.Appx. 538, 540-41 (5th Cir.2005) (attempt to locate canine officer lasted ten minutes, canine arrived 46 minutes after reasonable suspicion developed and a little more than an hour after initial stop for traffic violation). The government cites no case, nor have I found one, in which forty minutes was held to be a reasonable time in which to still be looking for a dog without any specific lead that one might be available. Keeping a car and its driver on the side of the road for that length of time based on nothing more than a remote hope that a canine might finally turn up is unreasonable.

. The district court found that there was probable cause of drug trafficking at the inception of the stop. That would mean officers could have arrested Spears and conducted a search of his vehicle solely on the basis for observing him in the driveway of 1251 New York. The officers apparently did not believe they had this authority, thus the lengthy stop during which they were trying to establish probable cause. Although the inquiry does not depend on the officer’s subjective views, I agree with them that visiting a known drug trafficking location alone is insufficient to establish the higher standard of probable cause.