*671 SUHRHE INRICH, Circuit Judge,
concurring.
While I agree with the majority, I write separately to highlight what I see as additional reasons to affirm the district court’s decision regarding the duration of the traffic stop.
The majority opinion rightly examines whether Trooper Ziecina developed a reasonable suspicion to detain Calvetti and Cortez beyond the time needed to complete the purpose of the initial traffic stop. I agree that the combination of facts discussed in the majority opinion could produce a reasonable suspicion of criminal activity. But we must also consider whether Ziecina developed a reasonable suspicion before the expiration of time reasonably required to address the traffic violation. See Rodriguez v. United States, — U.S. —, 135 S.Ct. 1609, 1615, 191 L.Ed.2d 492 (2015) (“An officer ... may conduct certain unrelated checks during an otherwise lawful traffic stop. But ... he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.”). If Ziecina developed a reasonable suspicion only after he had already “measurably extend[ed]” the stop by extraneous questioning, there would still be a Fourth Amendment violation. Id.; see Joshua v. DeWitt, 341 F.3d 430, 446 (6th Cir. 2003) (noting that a petitioner’s criminal history could not be considered as a factor supporting reasonable suspicion because the officer did not learn about the criminal history until he “had already verified that Petitioner was in lawful possession of the rental car and had already been detaining Petitioner without reasonable suspicion for quite some time”).
In this case, the first fifteen minutes of questioning revolved around subjects recognized as incident to a traffic stop; Zieci-na asked primarily, about Calvetti’s travel plans and the ownership of the minivan. See Rodriguez, 135 S.Ct. at 1615 (checking driver’s license, determining whether there are outstanding warrants, and inspecting the automobile’s registration and insurance are ordinary inquiries incident to a traffic stop); United States v. Stepp, 680 F.3d 651, 662 (6th Cir. 2012) (inquiring about the driver’s travel plans and authority to operate the vehicle is not extraneous questioning). By the end of these first fifteen minutes, Ziecina had learned about Calvetti’s irregular driving behavior, her nervous demeanor, the defendants’ unusual and unlikely travel plans, and the discrepancy in the minivan ownership — all factors contributing to a nascent reasonable suspicion. At the end of this initial round of questioning, Calvetti also gave her consent to search the van, and the. officers conducted an initial dog sniff of the van that did not result in any alerts. After the dog sniff, Ziecina asked Calvetti more questions about the ownership of the van. Ziecina then asked Calvetti about her and Cortez’s criminal history — a subject matter not tied to the original purpose of the stop — and discovered that both of them had drug-related convictions. This timing is arguably problematic because Ziecina did not learn about Calvetti’s and Cortez’s criminal history, one of the factors critical to the reasonable suspicion calculus, until immediately after he’d exhausted most of subjects related to the initial traffic stop. Two points refute this argument.
The first point is that Ziecina did not engage in “unrelated checks” about the defendants’ criminal history “in a way that prolong[ed] the stop.” Rodriguez, 135 S.Ct. at 1615. Immediately after concluding the traffic-related inquiries, Ziecina asked two brief questions about criminal history, the answers to which built upon his previous suspicions to grow into a reasonable suspicion. Stepp exhibited similar on-the-cusp timing and it did not render the duration *672 of the stop unreasonable, thereby justifying an extension of the stop. In Stepp, the officer did not ask questions eliciting the passengers’ dubious travel plans until he had already announced his intention to issue a warning ticket and began filling it out. 680 F.3d at 658. Yet the court relied on the passengers’ dubious travel plans as one of the factors justifying the prolonged detention. Id. at 666. Thus, it appears that if the last factor needed to create a reasonable suspicion arises around the same time that the traffic stop would otherwise come to its reasonable conclusion, there is no Fourth Amendment violation. That is what happened here. Although Ziecina did not learn about Calvetti’s and Cortez’s criminal history until after he had covered most of the topics incident to the traffic stop, that was the last piece of the puzzle necessary to create a reasonable suspicion. Zie-cina’s brief questioning about criminal history thus did not “measurably extend the duration of the stop,” Rodriguez, 135 S.Ct. at 1615, because the answers revealing a criminal drug history completed Ziecina’s developing reasonable suspicion at around the same time the traffic stop should otherwise have come to an end.
The second, more important point is that Calvetti and Cortez gave their consent to search the van within the first fifteen minutes of the traffic stop — a fact not present in either Stepp or Rodriguez, where the defendants denied officers’ requests to search their car. We held in United States v. Erwin, 155 F.3d 818, 823 (6th Cir. 1998) (en banc), that a police officer does not violate the Fourth Amendment by asking for consent to search a person’s vehicle, even if the tasks relevant to the traffic violation are complete and there is no reasonable suspicion that a crime has been committed. See also United States v. Canipe, 569 F.3d 597, 601-02 (6th Cir. 2009) (finding no Fourth Amendment violation where an officer asked for, and received, consent to search a vehicle after issuing a traffic citation). Although asking for consent to search could conceivably “measurably extend the duration of the stop” without the reasonable suspicion required by Rodriguez, 135 S.Ct. at 1615, the Supreme Court has held that officers are not required to have a reasonable suspicion to request consent to search a person’s luggage as long as that person felt free to decline the officer’s request. Florida v. Bostick, 501 U.S. 429, 433-37, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). The same reasoning applies to a person’s motor vehicle. Neither Calvetti nor Cortez have argued that their consent to search the van was coerced or otherwise involuntary. Therefore, their consent to a search of the van roughly fifteen minutes into the traffic stop constitutes an additional reasonable basis for prolonging the traffic stop independent of the officers’ reasonable suspicion of criminal activity.