**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1325
_____

WILMAR LEONEL GREGORIO RIVERA,
Petitioner

v.

ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A216-545-129)
Immigration Judge: Steven A. Morley
_____

Submitted Under Third Circuit LAR 34.1(a)
January 20, 2022

Before:   JORDAN, RESTREPO and SMITH, *Circuit Judges*

(Filed: January 26, 2022)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Petitioner Wilmar Gregorio Rivera is a native and citizen of Guatemala. He entered the United States approximately fifteen years ago without being admitted or paroled. In 2018, the Department of Homeland Security ("DHS") placed him in removal proceedings after Immigration and Customs Enforcement ("ICE") officers obtained evidence of his alienage during an investigatory stop. During those proceedings, Rivera sought to suppress that evidence, arguing it had been obtained in an egregious violation of his Fourth Amendment rights. The Immigration Judge ("IJ") denied Rivera's motion to suppress and ordered him removed, and his appeal was dismissed by the Board of Immigration Appeals ("BIA"). We will deny Rivera's now-pending petition for review.

## I.    BACKGROUND[1]

In the early hours of March 13, 2018, Rivera's employer picked him up in Philadelphia for work. Rivera rode in the passenger seat of the employer's van, and they drove to pick up their colleague, Nelson Castaneda Perez. Unbeknownst to Rivera, Perez was being sought by ICE officers who were conducting a fugitive enforcement operation at Perez's home that day.[2]

---

[1] There are slight differences between the facts as described in Rivera's affidavit and as laid out in his Record of Deportable Alien, Form I-213, on which the IJ relied. As discussed below, we dispose of Rivera's appeal on his argument that he set out a prima facie case for an evidentiary hearing, so we accept his affidavit as true for purposes of this decision.

[2] Perez was a target for ICE because he was an alien with pending criminal charges.

2

ICE officers observed an individual matching Perez's description exit the home and enter the van, so they followed the vehicle for roughly six blocks before making an investigatory stop. The officers pulled the van over and questioned the three occupants. First, the officers questioned the employer, who identified himself and, upon request, produced appropriate identification. They then questioned Rivera. When Rivera could not produce identification, the officers asked for his name and where he was from. He identified himself and said he was a citizen of Guatemala. Lastly, the officers spoke with Perez. The officers called him by the wrong name but ultimately identified him using records and photographs from Perez's prior arrest. The officers then removed Perez from the van, arrested him, and placed him in the patrol vehicle.

After that, the officers returned to the van and took Rivera's fingerprints to run a biometrics check. When the search yielded no results, they arrested Rivera for a suspected immigration violation and took him into custody. In an interview taken at the ICE field office, Rivera stated that he entered the United States without being admitted or paroled. DHS subsequently filed a Notice to Appear, charging Rivera as removable under 8 U.S.C. § 1182(a)(6)(A)(i).

In his removal proceeding, Rivera alleged that his Fourth Amendment rights had been violated. He further argued that because the violation was "egregious and part of a widespread pattern of abuse" (A.R. at 132), evidence of his alienage should be suppressed and the removal proceeding terminated. The IJ denied Rivera's suppression motion, concluding that he failed to allege an egregious or widespread Fourth

3

Amendment violation.  On appeal, the BIA "adopt[ed] and affirm[ed]" the IJ's decision. Rivera timely filed a petition for review.

## II.    DISCUSSION[3]

Rivera argues that ICE officers egregiously violated his Fourth Amendment rights as part of a widespread pattern of such violations and that the resulting evidence of his alienage should never have been considered.  First, he says such a violation is clear from the record that was before the IJ.  Even if it is not, however, he says that his affidavit sets out a prima facie Fourth Amendment violation under *Yoc-Us v. Attorney General*, 932 F.3d 98 (3d Cir. 2019), and he asks that we remand the case to the IJ to conduct an evidentiary hearing on his motion to suppress.  His arguments lack merit.[4]

---

[3] The BIA had jurisdiction to review the IJ's order of removal and order denying Rivera's motion for suppression and termination pursuant to 8 C.F.R. § 1003.1(b)(3).  We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review the BIA's decision.  *Galeas Figueroa v. Att'y Gen.*, 998 F.3d 77, 84 (3d Cir. 2021).  "Ordinarily, Courts of Appeals review decisions of the [BIA], and not those of an IJ."  *Camara v. Att'y Gen.*, 580 F.3d 196, 201 (3d Cir. 2009) (citation omitted).  Therefore, we review the IJ's decision only "to the extent the BIA substantially relied on that opinion."  *B.C. v. Att'y Gen.*, 12 F.4th 306, 313 (3d Cir. 2021) (quoting *Camara*, 580 F.3d at 201) (quotation marks omitted).

We review questions of law de novo.  *Id.*  We review factual findings "to ensure that they are supported by substantial evidence from the record considered as a whole, and we will reverse based on a factual error only if any reasonable fact-finder would be 'compelled to conclude otherwise.'"  *Huang v. Att'y Gen.*, 620 F.3d 372, 379 (3d Cir. 2010) (citation omitted) (quoting 8 U.S.C. § 1252(b)(4)(B)).

[4] Rivera also alleges that the ICE officers violated 8 C.F.R § 287.8(b)(2) by conducting an unlawful stop and seizure, thereby requiring termination of the proceedings.  Because we hold that the officers had reasonable suspicion to stop the van, that argument fails and we do not address it further.

We have held that "the exclusionary rule should apply in deportation/removal proceedings involving egregious or widespread Fourth Amendment violations[.]"[5] *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 271-72 (3d Cir. 2012). If an alien seeks an evidentiary hearing on a motion to suppress evidence under the Fourth Amendment, he must set out a prima facie case for relief. *Id.* at 273 (citing *Matter of Barcenas*, 19 I. & N. Dec. 609, 611 (B.I.A. 1988) ("One who raises the claim questioning the legality of the evidence must come forward with proof establishing a prima facie case before [ICE] will be called on to assume the burden of justifying the manner in which it obtained the evidence.")). As part of his prima facie showing, he must first allege facts that, taken as true, demonstrate a Fourth Amendment violation. *Yoc-Us*, 932 F.3d at 112. Second, he must show that the alleged violation "could be deemed to be egregious or widespread." *Id.*

As to whether he made a prima facie showing that evidence of his alienage was obtained in violation of the Fourth Amendment, Rivera argues that the ICE officers lacked reasonable suspicion to stop the car, and he says that the officers unlawfully extended the stop. He points to two moments where the officers extended the stop: when they questioned him before questioning Perez and when they returned to the van after

---

[5] In so holding, we observed that eight Justices of the Supreme Court in *INS v. Lopez–Mendoza*, 468 U.S. 1032 (1984), agreed that "the remedy of suppression justifies the social cost" in cases where "constitutional violations by immigration officers are 'widespread'" or evidence was obtained as a result of an egregious violation of constitutional rights. *Oliva-Ramos v. Att'y Gen.*, 694 F.3d 259, 271-72 (3d Cir. 2012).

arresting Perez. Indeed, Rivera argues that ICE officers did not have reasonable suspicion to stop the van at all.

Reasonable suspicion turns on "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant t[he] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). We consider "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Yoc-Us*, 932 F.3d at 104 (quoting *Terry*, 392 U.S. at 20). In this case, we agree with the BIA and IJ that the ICE officers had reasonable suspicion to stop the van. The officers saw an individual, Perez, who they had reason to believe was the target of their search, enter the van. The officers possessed the target's "arrest photographs" and observed him leaving a residence known to be home to their target. (A.R. at 115-16, 194.) They thus had reasonable suspicion to stop the van. *See United States v. Bey*, 911 F.3d 139, 142, 146 (3d Cir. 2018) (finding reasonable suspicion to stop a defendant "[w]hen police noticed [him] walking out of [a] Café" in proximity to the target's expected location, while wearing a "red, hooded puffer jacket and black sweatpants[,]" matching the target's clothing).

Next, Rivera argues that "the evidence [he] proffered, taken as true, establishes that [the ICE officers] violated his Fourth Amendment rights when they impermissibly extended the stop beyond its original 'mission[.]'" (Opening Br. at 19 (citing *Rodriguez v. United States*, 575 U.S. 348, 348-349 (2015)).) He contends that the first unlawful extension occurred when those officers began questioning the driver and himself instead of immediately questioning their target, Perez. They should have known Perez was in the

6

back of the van, Rivera claims, because they saw him get into the back of the van six blocks earlier. Rivera argues that questioning Perez would have been "the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Rivera also claims that another unlawful extension of the stop occurred when the officers, after arresting Perez, returned to the van to take Rivera's fingerprints. That, he argues, also prolonged the stop and was outside its mission.

He is wrong. Neither moment was an unlawful extension of the stop. First, as the government contends, questioning the driver and Rivera before questioning Perez was within the mission of the stop because such questions sought to confirm the presence of their target and were a reasonable safety precaution. *See Rodriguez*, 575 U.S. at 356 ("[A]n officer may need to take certain negligibly burdensome precautions in order to complete his mission safely."); *cf. Hiibel v. Sixth Judicial Dist. Court*, 542 U.S. 177, 186 (2004) (collecting cases noting the routine nature of determining identity during a stop). Second, the officers' questioning of Rivera and subsequent identification of Perez revealed that Rivera was a native of Guatemala without identification, who was traveling with Perez, a Guatemalan fugitive and the target of an ICE investigation. Such knowledge provided the officers reasonable suspicion to briefly investigate his alienage by returning to the van to take a fingerprint scan. *See United States v. Green*, 897 F.3d 173, 179 (3d Cir. 2018) ("An unreasonable extension occurs when an officer, without

7

reasonable suspicion, diverts from a stop's traffic-based purpose to investigate other crimes.").[6]

## III.  CONCLUSION

Rivera has not set out a prima facie case that his Fourth Amendment rights were violated and is not entitled to an evidentiary hearing.  Having determined that there was no Fourth Amendment violation, we need not reach Rivera's arguments on egregiousness or pattern of abuse.  We will accordingly deny the petition for review.

---

[6] This case is distinguishable from *Yoc-Us v. Attorney General*, 932 F.3d 98 (3d Cir. 2019), on which Rivera relies, because in that case it was local law enforcement who conducted an alienage investigation during an unrelated stop.  *See id.* at 105 ("Absent such authorization, local officers are discouraged from involving themselves in immigration matters." (citation omitted)).  Moreover, the officer in *Yoc-Us* lacked "reasonable suspicion that any of the passengers were engaged in any criminal activity or that there were any safety concerns to address."  *Id.* at 106.  In this case, duly authorized ICE officers investigated Rivera's alienage after stopping the van based on reasonable suspicion.