[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11662

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

RUBEN RAMIREZ-RIVERA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:21-cr-14032-DMM-1

_____

Before NEWSOM, GRANT, and ANDERSON, Circuit Judges.

PER CURIAM:

Ruben Ramirez-Rivera appeals the district court's denial of his motion to suppress evidence that law enforcement obtained following the traffic stop of a car in which he was a passenger. He argues, first, that there was no probable cause for the stop because the testimony of the officer who initiated the stop, Detective Seth Abelin, did not show that the car's tag was illegible from 50 feet away, as required to violate Fla. Stat. § 316.221(2). Second, he contends that law enforcement unreasonably prolonged the stop to conduct a K-9 sniff test of the car.

Because a motion to suppress evidence presents a mixed question of law and fact, we review the district court's factual findings for clear error and its application of the law to the facts *de novo*. *United States v. Lewis*, 674 F.3d 1298, 1302-03 (11th Cir. 2012). We construe all facts in the light most favorable to the party that prevailed in the district court. *United States v. Holt*, 777 F.3d 1234, 1255 (11th Cir. 2015). We defer to the district court's factual determinations unless the district court's understanding of the facts is "unbelievable." *Id.* at 1256 (quotation marks omitted).

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. amend. IV. Because a routine traffic stop is a limited form of seizure that is more analogous to an investigative detention than a custodial arrest, we

analyze the legality of such stops under the standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968). *Holt*, 777 F.3d at 1256. "*Terry* and its progeny allow an officer to, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *United States v. Gonzalez-Zea*, 995 F.3d 1297, 1302 (11th Cir.) (quotation marks omitted), *cert. denied*, 142 S. Ct. 506 (2021).

In *Terry*, the Supreme Court adopted "a dual inquiry for evaluating the reasonableness of an investigative stop." *Id.* (quotation marks omitted). Under *Terry*'s two-part inquiry, we must "first examine 'whether the officer's action was justified at its inception,' which turns on whether the officers had a reasonable suspicion that the defendant had engaged in, was engaging in, or was about to engage in, a crime." *Id.* (quoting Terry, 392 U.S. at 20). Second, we must consider "whether the stop was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quotation marks and brackets omitted).

Moreover, "the *duration* of the traffic stop must be limited to the time necessary to effectuate the purpose of the stop." *Holt*, 777 F.3d at 1256 (quotation marks omitted). "Generally, a traffic stop may not last any longer than necessary to process the traffic violation." *Id.* However, an officer may prolong a traffic stop in "special circumstances." *Id.* (quotation marks omitted). Specifically, "an officer may prolong a traffic stop to investigate the driver's license and the vehicle registration, including by requesting a computer check, or while waiting for the results of a criminal

history check that is part of the officer's routine traffic investigation." *Id.* Such activities, however, "must not prolong the traffic stop beyond a reasonable amount of time under the circumstances of the stop." *Id.* Although we measure the reasonableness of a stop's duration under the totality of the circumstances, we have approved traffic stops lasting, for example, for 14 minutes and 50 minutes. *Id.* However, "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 575 U.S. 348, 350 (2015). "A seizure justified only by a police-observed traffic violation, therefore, becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id.* at 350-51 (quotation marks and brackets omitted).

As to the use of drug dogs during traffic stops, the Supreme Court has held that "the use of a well-trained narcotics-detection dog—one that does not expose noncontraband items that otherwise would remain hidden from public view—during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Illinois v. Caballes*, 543 U.S. 405, 409 (2005) (quotation marks and citation omitted).

In *Holt*, we concluded that there was no error in the district court's denial of Holt's motions to suppress evidence seized during two traffic stops involving canine units. *Holt*, 777 F.3d at 1257. We held that the record clearly supported the district court's findings that, prior to the arrival of the canine units, neither traffic stop

exceeded an ordinary traffic stop in duration or scope. *Id.* In particular, we explained that the length of time that elapsed before the deployment of the drug dog—27 minutes in the first stop, and only a few minutes in the second stop—was not unreasonable, and "uncontroverted testimony established that the canine units arrived while the officers still were conducting routine records checks and preparing the traffic citations." *Id.* Accordingly, we held that the use of the canines to sniff the exterior of the vehicles during lawful traffic stops did not violate the Fourth Amendment. *Id.*

Under Florida law, "[e]ither a taillamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear." Fla. Stat. § 316.221(2). This Court has affirmed the constitutionality of traffic stops for violations of inoperable-tag-light laws. *Holt*, 777 F.3d at 1244, 1256-57.

Here, Ramirez-Rivera has not shown that the district court erred in denying his motion to suppress. *See Holt*, 777 F.3d at 1255-57; *Gonzalez-Zea*, 995 F.3d at 1302. First, the court did not err in deciding that the traffic stop was based on Officer Abelin's reasonable suspicion that the car was violating § 316.221(2). *See Gonzalez-Zea*, 995 F.3d at 1302; *Holt*, 777 F.3d at 1256. The record showed that Officer Abelin had just pulled into the parking lot of a Frito Lay factory when the car passed by on a parallel road. It was 7:38 p.m. and dark out, and Officer Abelin noticed that one of the passing car's tag lights was out, leaving one side of its tag "unreadable" in the dark. Officer Abelin testified that he made a U-turn,

followed the car a short distance, and when he was "[a]bout 30 feet [away] with [his] light shining on the back rear end of the vehicle [he] could see the tag. Based on this, the court found that the tag was not legible from 50 feet away, as required by § 316.221(2). This finding was not clearly erroneous, because the court's interpretation of Officer Abelin's testimony—that he could not read the tag until he was 30 feet away—was not "unbelievable," but was a reasonable understanding of Officer Abelin's testimony. *See Holt*, 777 F.3d at 1256 (quotation marks omitted). Because the court did not clearly err in its factual finding that the tag was illegible from 50 feet away, it did not err in concluding that the traffic stop was based on reasonable suspicion and was, thus, lawful. *See id.*; *Gonzalez-Zea*, 995 F.3d at 1302.

Second, the district court did not err in finding that law enforcement did not unlawfully prolong the stop to conduct the K-9 drug sniff. *See Holt*, 777 F.3d at 1256-57. As stated above, the stop itself was lawful. The record showed that Officer Abelin approached the car and asked its occupants for identification and, ultimately, to step out of the vehicle. Officer Abelin then relayed their identification information to dispatch, and within five minutes—while Officer Abelin was waiting to hear back from dispatch—a second officer conducted a K-9 sniff of the car and the dog gave a positive narcotics alert on the car. Because the sniff occurred while Officer Abelin was still conducting a routine record check, it did not unlawfully prolong the stop in violation of the Fourth Amendment. *See Holt*, 777 F.3d at 1256-57. Moreover, the entire

22-11662                Opinion of the Court                7

duration of the stop, between the time Officer Abelin pulled over the car to when he placed Ramirez-Rivera under arrest, was approximately eight minutes, which was not an unreasonable amount of time to conduct a routine record check under the totality of the circumstances. *Holt*, 777 F.3d at 1257.

**AFFIRMED.**