COURT OF APPEALS
DECISION
DATED AND FILED

December 5, 2023

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP284**

Cir. Ct. No. **2018TR5408**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JOHN A. SHILTS,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for St. Croix County: J. MICHAEL BITNEY, Judge. *Affirmed*.

¶1 GILL, J.[1] John Shilts appeals a judgment convicting him of operating a motor vehicle while intoxicated (OWI), as a first offense. Shilts argues that: (1) law enforcement officers lacked reasonable suspicion to believe

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

that he was driving under the influence of alcohol and therefore violated his Fourth Amendment rights by asking him to step out of his vehicle to perform field sobriety tests, *see Terry v. Ohio*, 392 U.S. 1 (1968); and (2) the duration of his *Terry* stop was unreasonable. This court rejects Shilts' arguments and affirms the judgment.

## BACKGROUND

¶2      The circuit court made the following factual findings in its oral decision denying Shilts' motion to suppress all evidence obtained as a result of a traffic stop. Shilts does not argue on appeal that any of these findings are clearly erroneous.

¶3      St. Croix County Sheriff's Deputy Derek Wells was traveling northbound on County Highway A in Richmond Township on September 30, 2018, at approximately 11:00 p.m. Wells noticed a vehicle traveling toward him in the distance, and its headlights appeared to be moving at what he considered a high rate of speed. Wells' squad car's radar device showed that the oncoming vehicle was traveling at eighty-five miles per hour in areas with speed limits of forty-five to fifty-five miles per hour. As the approaching southbound vehicle came around a curve on County highway A, it was traveling in Wells' northbound lane. Wells took evasive action by driving into the ditch to avoid being hit head-on. He was not able to identify the make or model of the vehicle.

¶4      Wells observed the vehicle's taillights and its continuous travel in his rearview mirror. He then made a U-turn and drove out of the ditch, which caused him to lose sight of the vehicle for approximately one second. Wells testified that he then pursued the vehicle, saw the taillights continuously ahead of him, and did not see any other vehicles. During the pursuit, the other vehicle was

2

traveling at a high rate of speed, and Wells had to drive nearly 100 miles per hour to catch up to it. Wells activated his squad car's red-and-blue emergency lights, and the other vehicle pulled over once Wells was close to it. Wells testified that the total length of time that elapsed from his entry into the ditch until he stopped the other vehicle was two or three minutes.

¶5 Wells executed a modified high-risk stop, approaching the vehicle with his gun drawn. He immediately realized that the driver was Shilts, who was a coworker and good friend. Wells then holstered his weapon, and Shilts said "something along the lines of, 'I swear to God it was the vehicle that passed me.'" Wells observed that Shilts, who had gotten out of his car, was uneven on his feet and his initial words were slurred. Wells also detected an odor of chewing tobacco and intoxicants.

¶6 Shilts and Wells returned to their respective vehicles and Wells called his superior, Sergeant Thomas Williams, in compliance with the procedure for the St. Croix County Sheriff's Department in situations where there was a potential conflict of interest. Williams then contacted Chief Deputy Cathy Borgschatz to discuss the conflict of interest. They determined that they would contact an outside agency, the Wisconsin State Patrol, to have them respond and process the traffic stop. Sergeant Clifford Parr of the Wisconsin State Patrol decided against sending Trooper Jody Wood, who was on duty in St. Croix County that night, because she works hand-in-hand with the St. Croix County Sheriff's Department. Instead, Parr sent the closest state trooper from outside of St. Croix County, Trooper Brett Boley.

¶7 Boley was approximately fifty-five minutes from the scene of the traffic stop when he was asked to respond. He proceeded directly to the location

after dropping off some equipment at a weigh station, which added less than one minute to his trip time. He arrived at the scene at 12:15 a.m. After gathering information from Wells and speaking with other law enforcement personnel present, Boley asked Shilts to step out of his vehicle.

¶8 Boley noted a moderate odor of intoxicants coming from Shilts and that his eyes were bloodshot and glassy. Boley testified that Shilts' demeanor was argumentative and that he admitted to having one drink per hour starting at 5:00 p.m. Boley conducted field sobriety tests, which provided multiple indicators that Shilts was impaired, including six out of six indicators during a horizontal gaze nystagmus test and the observation of vertical gaze nystagmus, indicating "a high amount of an intoxicant in [Shilts'] system." Shilts also exhibited clues of intoxication on the walk and turn test. Boley testified that Shilts declined to take a PBT, stating that he believed that he had passed the field sobriety tests. Boley then placed Shilts under arrest and issued a citation for OWI, as a first offense.

¶9 Thereafter, Shilts filed a motion to suppress evidence obtained after the traffic stop was extended, arguing that the officers lacked reasonable suspicion to expand the initial traffic stop, that the duration of the stop was unreasonable, and that there was a lack of probable cause to administer a PBT. After a motion hearing, the circuit court concluded that the actions of the law enforcement officers were reasonable under the Fourth Amendment, and it denied Shilts' motion to suppress.

¶10 Shilts was found guilty of first-offense OWI after a bench trial that was based on stipulated facts. The circuit court revoked Shilts' driving privileges for six months, imposed a forfeiture of $811.50, and mandated an alcohol and

other drug abuse assessment and a driver safety plan. The court stayed the sentence pending this appeal.

## DISCUSSION

¶11 Shilts first argues on appeal that Boley lacked reasonable suspicion to conclude that Shilts was driving under the influence of alcohol and therefore violated his Fourth Amendment rights by asking him to step out of his vehicle to perform field sobriety tests.

¶12 "In reviewing a denial of a motion to suppress, we will uphold the circuit court's findings of fact unless they are clearly erroneous." *State v. Young*, 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997). "Whether those facts satisfy the constitutional requirement of reasonableness is a question of law, which we review de novo." *Id.*

¶13 "Traffic stops are meant to be brief interactions with law enforcement officers, and they may last no longer than required to address the circumstances that make them necessary." *State v. Floyd*, 2017 WI 78, ¶21, 377 Wis. 2d 394, 898 N.W.2d 560. "[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission'—to address the traffic violation that warranted the stop, and attend to related safety concerns." *Rodriguez v. United States*, 575 U.S. 348, 354 (2015) (citation omitted). "[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* at 350.

¶14 Boley received information from Wells and made numerous tangible observations himself that gave rise to a reasonable suspicion that Shilts had operated his vehicle while impaired. In particular, Wells informed Boley that

Shilts was driving in the wrong lane of traffic and nearly collided with Wells' vehicle head-on, requiring Wells to take evasive action by driving into a ditch to avoid an accident. Wells also told Boley that Shilts was driving at eighty-five miles per hour before he almost hit Wells in areas where the speed limit was forty-five to fifty-five miles per hour. Further, Shilts was driving even faster after the near collision.

¶15 Wells also informed Boley that after the stop when Shilts exited his vehicle, Shilts was uneven on his feet and was slurring his words. Then, when Boley began to question Shilts, Boley smelled alcohol on Shilts, observed that his eyes were bloodshot and glassy, and found Shilts to be argumentative. Moreover, Shilts admitted to consuming alcohol throughout the evening. Under a commonsense test, these facts gave rise to a reasonable suspicion that Shilts was driving under the influence of an intoxicant. In all, Boley acted reasonably under the Fourth Amendment in asking Shilts to exit his vehicle in order to perform field sobriety tests.

¶16 Shilts next argues, without authority, that local New Richmond police officers or the Wisconsin State Patrol trooper working in St. Croix County should have conducted the investigation, rather than waiting for a state trooper from outside the county.

¶17 The circuit court found that Williams was aware that New Richmond police officers had responded, but both he and Parr wanted a law enforcement officer who did not work locally to investigate in order to ensure that the traffic stop was conducted fairly and in an unbiased manner. Williams testified that where one of the employees of the sheriff's department is involved, department policy provides that they request an outside agency to process the traffic stop to

avoid a conflict of interest. He further testified that he did not want to have an employee of his agency investigate another employee of the agency because it gives the appearance of impropriety. We have no reason to second-guess the decisions of law enforcement personnel here who were attempting to avoid a conflict of interest.

¶18 Finally, Shilts argues that the duration of his *Terry* stop was unreasonable.[2] Specifically, Shilts argues that the State unlawfully extended the duration of his stop—first, by waiting for a state trooper from outside the county to conduct the investigation, and, second, by Boley stopping at the weigh station after he was called and prior to arriving at the scene.

¶19 Shilts relies upon *Rodriguez*, in which the United States Supreme Court reiterated that "a traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission'" of the stop. *Id.* at 354-55

---

[2] Shilts also argues that the results of his PBT should be suppressed because Boley lacked probable cause to request that Shilts take a PBT. We are confused by this argument, as, upon reviewing the record, we find no record of Shilts actually taking the PBT, Boley relying on the PBT when taking Shilts into custody, or the circuit court relying on the PBT in its oral ruling. Shilts provides a record citation for the fact that he took a PBT, but the citation only states that Boley requested that Shilts take a PBT. Further, immediately following the record citation that Shilts provides, Boley states that Shilts declined to take a PBT and that Boley then took Shilts into custody based on "his driving performance," the "initial contact," and his "performance on the field sobriety tests as a whole." There is no mention of Boley actually administering the PBT.

Regardless, even if Shilts was correct that he took a PBT, we are unpersuaded by his argument that Boley lacked probable cause to request the PBT. As we explained above, "[i]n reviewing a denial of a motion to suppress, we will uphold the circuit court's findings of fact unless they are clearly erroneous." *State v. Young*, 212 Wis. 2d 417, 424, 569 N.W.2d 84 (Ct. App. 1997). The court found that Shilts' performance on the field sobriety tests provided multiple clues that he was intoxicated. This finding is well supported by Boley's testimony. Because facts as found by the court establish that Shilts did not perform satisfactorily on the field sobriety tests, and in light of the numerous other indicia of intoxication, Boley had probable cause to ask Shilts to take a PBT.

(alteration in original; citation omitted). Shilts also argues that his case is like *State v. Davis*, 2021 WI App 65, 399 Wis. 2d 354, 965 N.W.2d 84, where this court concluded that the State unlawfully extended a traffic stop by checking to see if the defendant had violated any bond conditions, which was not an ordinary inquiry that was part of the original mission of the stop. *Id.*, ¶¶2, 4-6, 26-32, 36.

¶20 We conclude that the facts of Shilts' stop differ from those in *Rodriguez* and *Davis* in two key ways. First, in *Rodriguez*, the purpose of the stop was already completed when the police unlawfully extended the stop. *Rodriguez*, 575 U.S. at 352. Similarly, in *Davis*, the police unlawfully extended the stop after completing their investigation for the underlying reason for the stop. *Davis*, 399 Wis. 2d 354, ¶¶4-6. Here, the original purpose of Shilts' stop—to investigate the basis for his reckless driving—was not completed when the stop was delayed in order for an unbiased trooper from a different county to arrive and conduct the investigation. While he was waiting for Boley to arrive, Shilts returned to his truck. Shilts was not questioned, interrogated, or contacted by Wells while they were waiting. Wells merely remained in his car while waiting for Boley to arrive.

¶21 Second, the delays in *Rodriguez* and *Davis* occurred so that the police could perform searches that were unrelated to the stops and which did not arise out of evidence gained from the stops. *See Rodriguez*, 575 U.S. at 352; *Davis*, 399 Wis. 2d 354, ¶¶4-6. Here, the delay was necessary so that the underlying reason for the stop—Shilts' reckless driving—could be investigated in an unbiased manner, free of any conflict of interest. Accordingly, we conclude that the length of the delay was reasonable under *Terry*.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.