[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11351

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

ROYZELL LIGON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama
D.C. Docket No. 3:18-cr-00489-RAH-SMD-1

_____

Before JILL PRYOR, BRANCH, and BLACK, Circuit Judges.

PER CURIAM:

Royzell Ligon, Jr. appeals his conviction for possession of a firearm by a convicted felon, challenging the district court's denial of his motion to suppress evidence seized during his arrest.  First, Ligon asserts the district court erred in denying the motion to suppress because the encounter between him and Officer Griffin became a seizure when Ligon indicated both verbally and physically that he did not want to engage in a consensual encounter.  Second, he contends the district court erred by concluding that the *Terry*[1] stop was supported by reasonable suspicion based on the investigation of a murder and the criminal activity of public intoxication.  Third, he asserts that, even if the *Terry* stop was justified, Griffin unreasonably prolonged the stop by asking questions and checking identification for reasons unrelated to the purpose of the stop because he should have known from the pictures that Ligon was not the murder suspect.  After review,[2] we affirm Ligon's conviction.

---

[1] *Terry v. Ohio*, 392 U.S. 1 (1968).

[2] Because rulings on motions to suppress evidence present mixed questions of law and fact, we review the district court's factual findings for clear error and its application of the law to the facts *de novo*.  *United States v. Lewis*, 674 F.3d 1298, 1302-03 (11th Cir. 2012).  The facts are construed in favor of the party that prevailed below, and we afford substantial deference to the factfinder's credibility determinations.  *Id.* at 1303.

## I. DISCUSSION

### A. Voluntariness of Encounter

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause." U.S. Const. amend. IV. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v. Drayton*, 536 U.S. 194, 200 (2002). "Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage—provided they do not induce cooperation by coercive means." *Id.* at 201. However, officers need reasonable suspicion if an encounter becomes an investigatory stop. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). An investigatory stop occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).

The test for whether the officer restrained a citizen's liberty is whether "a reasonable person would feel free to terminate the encounter." *Drayton*, 536 U.S. at 201. Specifically, we must "imagine how an objective, reasonable, and innocent person would feel, not how the particular suspect felt." *United States v. Knights*, 989 F.3d 1281, 1286 (11th Cir.), *cert. denied*, 142 S. Ct. 709 (2021).

4                    Opinion of the Court                    21-11351

To determine how the reasonable person would feel, courts look at all relevant circumstances, including:

> whether a citizen's path is blocked or impeded; whether the officers retained the individual's identification; the suspect's age, education and intelligence; the length of the detention and questioning; the number of police officers present; whether the officers displayed their weapons; any physical touching of the suspect; and the language and tone of voice of the police.

*Id.* (quotation marks and alterations omitted).

The investigatory stop did not begin until Griffin told Ligon to stay with another officer because that was the first instance in which a reasonable person would not have felt free to leave. *See Drayton*, 536 U.S. at 201. The record shows a reasonable person would have felt free to leave prior to this command because, in the beginning of the interaction, Ligon walked away from Griffin. *Knights*, 989 F.3d at 1286-87. While Ligon said he did not want to talk to Griffin and walked to a nearby porch, he continued to talk to Griffin when Griffin asked questions without coercion or a show of authority. *See id.* at 1286; *Jordan*, 635 F.3d at 1185. The consensual encounter was not changed into a stop due to Griffin asking for identification, as that type of question is considered permissible during a consensual encounter, and while Griffin had to go to his car in order to confirm Ligon's identification, this was only because Ligon's only means of identification was his social security number.

*See Drayton*, 536 U.S. at 200; *Knights*, 989 F.3d at 1286.  During this time, Ligon was not threatened by the presence of several officers because, at most, only three officers were on scene, and Ligon sat on the porch without any police presence for over three minutes. *See Knights*, 989 F.3d at 1286.  The encounter became a stop when Griffin told Ligon to stay with another officer because, at that point, a reasonable person would not have felt free to leave.  *See Drayton*, 536 U.S. at 201.  Accordingly, we affirm as to this issue.

## B.  Reasonable Suspicion

Law enforcement officers may seize an individual for a brief, investigatory stop if they have a reasonable suspicion that (1) the individual was involved, or is about to be involved in, criminal activity, and (2) the stop was reasonably related in scope to the initial circumstances justifying the interference.  *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012).  While "reasonable suspicion" is a lower standard than probable cause, it still requires at least an objective justification.  *Id.*  A court must examine the totality of the circumstances to determine reasonableness under the Fourth Amendment.  *Id.*  Presence in a high-crime area is one factor that can contribute to the creation of reasonable suspicion, although it is not alone sufficient to support a finding of reasonable suspicion of criminal activity.  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).

Griffin had reasonable suspicion to investigate the murder based on the totality of the circumstances, including that: (1) Ligon was walking in a high-crime area about a mile from where a murder occurred four days prior; (2) Griffin was briefed that the

6                    Opinion of the Court                    21-11351

murder suspect might have been staying in the area; and (3) Griffin believed that Ligon matched the suspect's description based on his race, height, build, complexion, facial hair, and haircut. *See Lewis*, 674 F.3d at 1303; *Wardlow*, 528 U.S. at 124. While Griffin only verbalized the similarities of height, race, weight, and haircut in the body camera footage, the district court found Griffin's testimony credible, and Ligon has not challenged that determination on appeal. *See United States v. Jernigan*, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (stating a litigant abandons a claim when he fails to plainly and prominently raise it or his argument is only a passing reference to a contention). While the pictures of the suspect looked different from each other and another officer expressed doubts about the similarities, Griffin testified that one of the pictures looked similar to Ligon, justifying further investigation, and the court credited Griffin's testimony. *See Lewis*, 674 F.3d at 1303; *Jernigan*, 341 F.3d at 1283 n.8.

Griffin also had reasonable suspicion to investigate public intoxication based on the totality of the circumstances, including that: (1) Ligon was walking in the roadway in nighttime while wearing all black clothing; (2) Ligon was carrying a bottle, which Griffin thought might have contained beer; and (3) Ligon admitted to drinking and carrying a bottle containing alcohol. *See Lewis*, 674 F.3d at 1303; *Wardlow*, 528 U.S. at 124. While Ligon did not appear to act erratically or intoxicated, he admitted to drinking and carrying a bottle containing alcohol and was a potential danger to himself and others by walking in the road in a high-crime area at

night dressed in all black. Ala. Code § 13A-11-10 (providing "a person commits the crime of public intoxication if he appears in a public place under the influence of alcohol . . . to the degree that he endangers himself or another person or property"). Accordingly, we affirm as to this issue.

## C. Reasonableness of Stop

Officers do not have "unfettered authority to detain a person indefinitely" even if they have reasonable suspicion. *United States v. Campbell*, 26 F.4th 860, 881 (11th Cir. 2022) (*en banc*). The scope of the stop "must be carefully tailored to its underlying justification." *United States v. Braddy*, 11 F.4th 1298, 1310 (11th Cir. 2021) (quotation marks omitted). The stop may last no longer than is necessary to address the original reasons that warranted the stop. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The stop is unlawfully prolonged when an officer "(1) conduct[s] an unrelated inquiry aimed at investigating other crimes (2) that adds time to the stop (3) without reasonable suspicion." *Campbell*, 26 F.4th at 884.

Griffin did not unreasonably prolong the *Terry* stop because the actions he took were related to the crimes he was investigating. Griffin did not unreasonably prolong the stop by incorrectly notating Ligon's social security number because nothing in the record indicates Griffin was aware of his mistake when he made it given that he accused Ligon of providing the wrong number and told other officers that Ligon gave him the wrong number. Griffin did not unreasonably prolong the stop by requiring Ligon to find a ride or to ride with him because this requirement was related to the

potential public intoxication offense.  Any prolongment of the stop was due to Ligon's refusal to ride with Griffin and inability to confirm transportation.  Accordingly, we affirm as to this issue.

## II.  CONCLUSION

The district court did not err in finding Ligon's encounter with Griffin was voluntary until Griffin told Ligon to stay with the other officer because, prior to that, Ligon voluntarily answered Griffin's questions and Griffin did not coerce or show his authority to Ligon.  The district court did not err in finding Griffin had reasonable suspicion to stop Ligon to investigate a murder and public intoxication based on Ligon looking similar to a murder suspect and drinking while walking in the road at night.  Third, the district court did not err in finding the *Terry* stop was reasonable because Griffin's actions during the stop of checking Ligon's social security number and requiring Ligon to find a ride home or to ride with him were reasonably related to his investigation into Ligon's similarities with the murder suspect and Ligon's potential offense of public intoxication.  Accordingly, we affirm.[3]

**AFFIRMED.**

---

[3] The parties also discuss application of the attenuation doctrine, but because we affirm on the grounds above, we need not reach that issue.