J-A08037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ARTHUR ANDRE ANDERSON | : | |
| | : | |
| Appellant | : | No. 375 WDA 2022 |

Appeal from the Judgment of Sentence Entered February 24, 2022
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0001785-2021

BEFORE: STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED: MAY 2, 2023**

Arthur Andre Anderson (Anderson) appeals from the judgment of sentence imposed following his bench conviction in the Court of Common Pleas of Allegheny County (trial court) of several counts of Driving Under the Influence (DUI) of Alcohol or a Controlled Substance and the summary offense of failure to yield.[1] Anderson challenges the trial court's partial denial of his motion to suppress that challenged the search of Anderson's person and car because it violated both the Fourth Amendment to the United States

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(d)(1), (d)(2), (d)(3), (a)(2), (a)(1) and § 3323(c). The trial court found Anderson not guilty of three drug-related charges: person not to possess a controlled substance, possession of marijuana and possession of drug paraphernalia, 35 §§ 780-113(a)(16), (31) and (32).

Constitution and Article I, Section 8 of the Pennsylvania Constitution.[2] We affirm.

**I.**

This case arises from an August 24, 2020 incident where Police Officer Jayme Spealman of the North Braddock Borough Police Department and her partner, Officer Smerkar,[3] observed Anderson's vehicle fail to stop at a stop sign at about 9:00 p.m. At the suppression hearing, Officer Spealman was the only witness. She testified that while on patrol, she observed Anderson's car "blow through" a stop sign without yielding. (N.T. Suppression, 1/27/22, at 6). The officers initiated a traffic stop and Officer Spealman observed Anderson "making movements as if he was leaning over the seat trying to conceal something." (*Id.* at 7). Anderson then completely rolled through a second stop sign before coming to a stop.

As Officer Spealman approached Anderson's vehicle, he "was still leaning over like he was either reaching for something, either trying to push

---

[2] The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution guarantee "the right of the people to be secure in their persons, houses, papers, and possessions from unreasonable searches and seizures." *Luczki*, *supra* at 542. "To secure the right of citizens to be free from unreasonable search and seizure, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens to the extent those interactions compromise individual liberty." *Id.* (citation omitted).

[3] Officer Smerkar's first name is not apparent from the record.

something or grab something . . . completely leaning over the seat." (*Id.* at 8). She described Anderson's movements as furtive and Officer Smerkar withdrew his gun from his holster as he approached the passenger side of the vehicle and issued commands. Because Anderson continued to move after Officer Spealman directed him not to, she opened the car door and "asked him to step out of the car, but there was also a weapon. I saw a knife in the console . . . pocket of the door." (*Id.* at 9). Officer Spealman testified that she could smell alcohol emanating from Anderson's person or from the vehicle and she described his demeanor as "very agitated . . . [he] couldn't stand still . . . He kept moving away from the vehicle. He was very, very nervous as if he was trying to divert our attention away from him. He was acting real, real excited." (*Id.* at 11). Because his window was closed and he could not hear Officer Spealman's request, Officer Spealman then opened the door to get Mr. Anderson's attention, observing an "orange carpenter knife" in the door pocket. (*Id.* at 15). Officer Spealman ordered him out of the car and he was placed in the back of their police vehicle. As they were taking Anderson to their vehicle, Officer Spealman smelled alcohol coming from his breath or from inside his vehicle. The officers took his driver's license, checked his information and called for backup.

Back-up officers responded to the scene and Sergeant Larry Butler conducted a pat-down of Anderson's person, finding a small bag of marijuana and two small baggies of suspected crack cocaine. During a search of

Anderson's vehicle, police recovered an orange carpenter knife from the driver's side console and a glassine pipe from the passenger side console. Officer Spealman observed as another officer conducted a horizontal gaze nystagmus (HGN) test, the field sobriety test, which Anderson failed. Officer Spealman then arrested Anderson on suspicion of DUI and transported him to a hospital for a blood draw. (*Id.* at 14). At the suppression hearing, Officer Spealman opined that based on her interaction with and observation of Anderson, coupled with her training and experience, he was impaired to an extent that rendered him unable to safely operate a vehicle.

The trial court granted the suppression motion in part and denied it in part. It denied the portion of the suppression motion related to the DUI charges but suppressed evidence of the glass smoking device, the marijuana and the cocaine. After Anderson waived his right to a jury trial, he immediately proceeded to a bench trial and the parties' stipulated to incorporating the testimony from the suppression hearing, the affidavit of probable cause, the police report and the results of Anderson's blood test, which showed a positive result for alcohol and cannabinoids with a blood alcohol content of .092%. The trial court found Anderson guilty of the DUI offenses and failure to yield at a stop sign and found him not guilty of the drug-related offenses. It sentenced Anderson to attend a four-day DUI alternative to jail program, followed by six months of probation. This timely

J-A08037-23

appeal followed. Anderson and the trial court complied with Rule 1925. ***See*** Pa.R.A.P. 1925(a)-(b).[4]

## II.

While acknowledging that the initial traffic stop was legal, relying on ***Rodriguez v. United States***, 575 U.S. 348, 135 S. Ct. 1609 (2015), Anderson contends that the trial court erred in denying his motion to suppress the field sobriety test and blood draw underlying the DUI charges because of the prolonged unlawful stop to investigate without the requisite reasonable suspicion for possible drug charges, resulting in an unlawful seizure and violating his rights under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution.[5] What Anderson appears to be arguing is that

_____

[4] When reviewing an order denying a motion to suppress evidence,

> [w]e may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error. An appellate court, of course, is not bound by the suppression court's conclusions of law. It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.

***Commonwealth v. Luczki***, 212 A.3d 530, 542 (Pa. Super. 2019) (citations omitted).

[5] The Fourth Amendment of the United States establishes the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, . . . " Article I, Section 8 of the Pennsylvania Constitution provides: "The people shall be secure in their
*(Footnote Continued Next Page)*

- 5 -

even if the police officers had reasonable suspicion to conduct a field sobriety test and a blood test to determine if he was driving under the influence, because that determination was "delayed" by the drug investigation, he is then entitled to have the results of the field sobriety test suppressed. *Rodriquez*, however, offers no support for that proposition.

In *Rodriguez*, a K-9 police officer stopped a vehicle because the vehicle slowly moved onto the shoulder for one or two seconds and then jerked back onto the road. The K-9 officer approached the two men in the vehicle, asked for pertinent information and issued a warning to the driver. Even though he acknowledged the traffic stop was over, the K−9 officer instructed the driver not to move while he walked his dog around the vehicle, and the dog alerted the officer of the presence of drugs. Seven or eight minutes had elapsed from the time the written warning was issued until the dog indicated the presence of drugs. A search of the vehicle revealed a large bag of methamphetamine. A motion to suppress was brought because the traffic stop had ended and the police officer had unconstitutionally extended that stop to conduct another investigation to walk the dog around the vehicle.

In suppressing the search that resulted in the drug charges, the United States Supreme Court held that "while an officer may conduct certain

---

persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant."

unrelated checks during an otherwise lawful traffic stop . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." *Id.* at 575 U.S. at 355, 135 S. Ct. at 1615. It then held that "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." *Id.* at 575 U.S. at 350–51, 135 S.Ct. at 1612 (alterations in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S.Ct. 834, (2005)).

*Rodriguez* does not apply to this case for several reasons. First, the charges that were at issue in *Rodriquez* – the drug charges - flowed from an unreasonably prolonged stop after the traffic violation had been resolved by the issuance of a warning citation, while in this case the evidence at issue directly flowed from a legal traffic stop. Second, *Rodriquez* involved a search after the reason for the lawful search had ended and the drug charges were the result of a prolonged stop, while in this case, the investigation as to whether to arrest Anderson for DUI was ongoing because of the failed field sobriety test. Third, even if *Rodriquez* somehow applied, there was no delay because Officer Spealman, who had already observed that Anderson was impaired when he exited his vehicle, testified that the failed field sobriety occurred contemporaneously with the drug investigation so that there was no unreasonable delay. Finally, Anderson has not shown how he was impacted

in any way by the drug investigation even if there had been a delay because he would have still failed the field sobriety test and blood draw, just sooner.

Accordingly, for the foregoing reasons, because we affirm the trial court's denial of the motion to suppress the results of the field sobriety test and the blood test, we affirm Anderson's conviction of DUI.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/2/2023