[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 21-13791

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DANIEL GUTIERREZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 4:21-cr-00011-AW-MAF-1

_____

Before WILLIAM PRYOR, Chief Judge, and LUCK and MARCUS, Circuit Judges.

PER CURIAM:

Daniel Gutierrez appeals his conviction for methamphetamine and fentanyl possession on three grounds: that evidence against him was unconstitutionally seized during a prolonged traffic stop, that the district court should not have admitted the prosecution's expert-opinion testimony, and that the district court erroneously sentenced him in accordance with a statutory minimum. Gutierrez's constitutional challenge fails because the state troopers lawfully stopped Gutierrez and did not extend their traffic stop beyond the time necessary to fulfill its purpose. And the district court did not abuse its discretion in admitting the expert witness testimony. Finally, Gutierrez's last-minute sentencing argument relies on a decision of this Court that is irrelevant to this appeal. We affirm.

## I. BACKGROUND

Florida state trooper Gabriel Llanes stopped Gutierrez and his wife at 8:55 a.m. as they travelled in a semi-truck towing a trailer full of smaller cars. Florida law requires that the lettering on a license plate be clearly visible, FLA. STAT. § 316.605(1), but according to Llanes's testimony, the lights over Gutierrez's license plate faced outward and prevented Llanes from reading the license plate. Llanes explained this violation to Gutierrez and decided to give him a written warning.

Llanes began to write that warning at 9:01 a.m., at which time his patrol car's computer time-stamped the warning. He testified that the warning took more time than usual to complete because Gutierrez's truck, trailer, and license were from three different states. While Llanes was still working on the warning, another trooper arrived and called for a K-9 unit to conduct an open-air drug sniff. The unit arrived at 9:12 a.m., while Llanes was still working on the warning, and Llanes paused only to tell the arriving officer about the situation, to step out of his car for his own safety, and to explain the reason for the stop to Gutierrez's wife.

Before Llanes could finish the written warning, a drug dog alerted the troopers to the presence of illicit drugs. In a toolbox on the driver's side of the truck, the troopers found methamphetamine and blue tablets that looked like Oxycodone but were in fact fentanyl. The troopers arrested Gutierrez, and Llanes finished the warning at the jail. Gutierrez was indicted for possessing, with the intent to distribute, five grams or more of both methamphetamine and a substance containing fentanyl. *See* 21 U.S.C. § 841(a)(1), (b)(1)(B)(vi), (b)(1)(B)(viii).

Before trial, Gutierrez moved to suppress the drugs that were seized from the traffic stop. He argued that even if Llanes lawfully stopped him, Llanes unlawfully extended the stop so a dog could sniff around his car. That extension, he argued, violated the Fourth Amendment as interpreted in *Rodriguez v. United States*, 575 U.S. 348, 355 (2015). The district court credited Trooper Llanes's testimony and denied the motion on the ground that there was

probable cause for the stop and Llanes did not extend the stop longer than he needed to complete the written warning.

The district court also allowed the expert-opinion testimony of Dr. Jordan Trecki, a Drug Enforcement Administration pharmacology expert. The prosecution sought Dr. Trecki's testimony about "the impact of drugs of abuse on the human body and about dosages, side effects, and consequences of use . . . of drugs." Gutierrez moved *in limine* to exclude this testimony, and the district court addressed the motion in a hearing at the beginning of trial. Dr. Trecki had a Ph.D in pharmacology and had worked at the Environmental Protection Agency as a neurotoxicologist before transferring to the Drug Enforcement Administration. At the Drug Enforcement Administration, he ran the "DEA TOX" program, which "collects biological fluids from overdosed victims around the country" so that the agency can identify new illegal substances being trafficked. Dr. Trecki gained extensive experience reviewing samples from overdose victims and studying effects of drugs on the body. Dr. Trecki also testified that he based his testimony on clinical trials, peer-reviewed studies, common reference materials, and his own experience in the DEA TOX program.

The district court admitted Dr. Trecki's testimony. It concluded that Dr. Trecki was qualified to testify regarding the effects of different quantities of controlled substances and that his methods were reliable even if the conclusions were debated in the field. It also ruled that Dr. Trecki's testimony would be helpful to the jury. According to the district court, Dr. Trecki's testimony could

help the jury understand what quantity of the two relevant drugs would be appropriate for personal use, as opposed to distribution. The jury convicted Gutierrez, and the district court sentenced him to 120 months of imprisonment. This sentence was the minimum sentence permitted by the law because the prosecution gave notice of a previous "serious drug felony," namely conspiracy to possess cocaine with the intent to import and distribute it. *See* 21 U.S.C. § 841(b)(1)(B).

## II. STANDARDS OF REVIEW

"A denial of a motion to suppress involves mixed questions of fact and law," so we review the district court's factual findings for clear error and review questions of law and the district court's application of the law to facts *de novo*. *United States v. Campbell*, 26 F.4th 860, 870 (11th Cir. 2022) (en banc). We review a decision to admit expert opinion testimony for abuse of discretion and will not reverse "in the absence of manifest error." *United States v. Holt*, 777 F.3d 1234, 1264 (11th Cir. 2015).

## III. DISCUSSION

We divide our discussion in three parts. We begin with Gutierrez's argument that the denial of his motion to suppress violated the Fourth Amendment. We then address his argument that the district court abused its discretion in admitting Dr. Trecki's testimony. Last, we address Gutierrez's eleventh-hour sentencing challenge.

6                    Opinion of the Court                  21-13791

A .  *The District Court Correctly Denied the Motion to Suppress.*

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. To enforce this prohibition, courts exclude evidence that is the fruit of an unreasonable search or seizure. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). A routine traffic stop qualifies as a "seizure" within the meaning of the Fourth Amendment, and a stop is permissible only if the police have "reasonable suspicion" of unlawful activity. *Rodriguez*, 575 U.S. at 354–55. A traffic stop must not extend beyond when the "tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* at 354. So a police officer "may conduct certain unrelated checks," such as an open-air dog sniff, as part of the stop, but the checks must not prolong the stop unless there is independent reasonable suspicion for those checks. *Id.* at 355; *see also Campbell*, 26 F.4th at 884.

There was reasonable suspicion for the initial stop. Gutierrez argues that there was not reasonable suspicion that his license plate was unlawfully obscured. The district court found that the license plate was obscured. The district court examined a photograph of the license plate from Trooper Llanes's dash-camera and concluded that at least part of one number was blocked. And it credited Llanes's testimony that, from his perspective when Gutierrez drove by, as opposed to the more favorable angle the dash-camera offered, the license plate was even less visible. Gutierrez fails to explain why the district court's finding was clearly erroneous. *See Owens v. Wainwright*, 698 F.2d 1111, 1113 (11th Cir. 1983) ("Appellate courts

reviewing a cold record give particular deference to credibility determinations of a fact-finder who had the opportunity to see live testimony.").

Gutierrez also argues that Trooper Llanes unlawfully extended the stop to allow a drug-dog sniff. He contends that the tasks relevant to the license-plate violation for which he was stopped were completed at 9:01 a.m., when, according to Gutierrez, Llanes finished preparing the written warning. He argues that he should have been released then but was instead detained for another eleven minutes until a drug dog came and triggered the search that produced the evidence used against him at trial.

Gutierrez misreads the record. As the district court explained, Llanes *started* preparing the written warning at 9:01 a.m. but was still working on it when the drug dog arrived. He did not extend the stop after the completion of the written warning; the warning was incomplete when the dog detected the drugs in Gutierrez's car. Gutierrez's brief does not acknowledge this finding, let alone explain why it was clearly erroneous, so his sole challenge to the suppression ruling fails.

## B. The District Court Did Not Abuse Its Discretion in Admitting Expert Testimony.

We reject Gutierrez's argument that Dr. Trecki's testimony was irrelevant and unreliable. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Dr. Trecki's testimony helped the jury determine whether Gutierrez had drugs for personal use or

intended to distribute them as the indictment alleged. *See* 21 U.S.C. § 841(a)(1) (penalizing the possession of an illegal drug "with intent to . . . distribute" it). And Gutierrez's assertion that other experts would disagree with Dr. Trecki's testimony does not establish that the testimony was unreliable.

A settled framework governs the admission of expert-opinion testimony. Expert testimony is admissible if "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Esformes*, 60 F.4th 621, 636 (11th Cir. 2023) (citation omitted and alteration adopted). The district court may also exclude the testimony "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." FED. R. EVID. 403.

Gutierrez has not established that the district court committed "manifest error" when it found Dr. Trecki's testimony relevant and helpful to the jury. *Holt*, 777 F.3d at 1264. He argues that Dr. Trecki's pharmacological testimony would be relevant if Gutierrez had been found with *analogues* to illegal substances whose effects are unknown, not actual controlled substances like those seized from Gutierrez. But this argument does not respond to the district court's grounds for admitting Dr. Trecki's testimony. That the testimony could have been relevant to cases involving controlled-substance analogues does not establish that it was irrelevant in

21-13791                    Opinion of the Court                    9

Gutierrez's trial. Dr. Trecki's testimony about the effects of the specific drugs Gutierrez possessed could help the jury to assess whether the possession of that amount of drugs suggested an intent to distribute those drugs. Having failed to address the district court's justification for admitting the evidence, Gutierrez cannot establish on appeal that the testimony clearly did not "assist[] the trier of fact" to decide essential issues, *Esformes*, 60 F.4th at 636 (citation omitted), nor that the testimony was substantially more prejudicial than helpful, FED. R. EVID. 403. *See United States v. Morel*, 63 F.4th 913, 920 (11th Cir. 2023) (explaining that a district court must be affirmed if an appellant fails to challenge one of the independent grounds for its decision).

Gutierrez's methodology challenge also fails. He contends that Dr. Trecki's methodology was not "acceptable" without further explanation. And he argues that the testimony "was contradicted by other sources, including respected and accepted studies, organizations, reports, journals, and experts." The district court correctly rejected this argument on the ground that mere disagreement among possible experts is not enough to prove an expert's methodology unreliable. That disagreement can form the basis for cross-examination or competing witnesses, but it is not a ground for preventing a witness from testifying. *See Daubert*, 509 U.S. at 596.

*C. Gutierrez's Sentence Was Lawful.*

Only two days before oral argument, Gutierrez asked this Court for the first time to review the application of the statutory

mandatory minimum of ten years of imprisonment based on his prior conviction for conspiring to possess cocaine. He argues that our recent decision in *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc), requires vacating his sentence. In *Dupree*, we held that an inchoate offense like conspiracy is not a "controlled substance offense" triggering guideline sentencing enhancements. *Id.* at 1271. We decided *Dupree* four months before Gutierrez raised this issue. Gutierrez's submission is not only last-minute; it is also entirely meritless. *Dupree* addressed the interpretation of the term "controlled substance offense" in the Sentencing Guidelines. But Gutierrez was sentenced in excess of the guideline range for his offense because of a *statutory* minimum based on his previous "serious drug felony." 21 U.S.C. § 841(b)(1)(B). *Dupree* said nothing about statutory minimum sentences, so that decision is irrelevant to this appeal.

### IV. CONCLUSION

We **AFFIRM** Gutierrez's conviction and sentence.