**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

MAR 10 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DANIELLE N. HOUSTON, | No. 24-7268 |
| Plaintiff - Appellee, | D.C. No. 2:22-cv-01045-JAM-SCR |
| v. | |
| DAVID REEVES; BRENDAN BASSI, | MEMORANDUM* |
| Defendants - Appellants. | |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted February 11, 2026
San Francisco, California

Before: N.R. SMITH, NGUYEN, and SANCHEZ, Circuit Judges.

Defendants-Appellants Fairfield Police Officers Brendan Bassi ("Bassi")

and David Reeves ("Reeves") (collectively, "Defendants") appeal the district

court's denial of qualified immunity at summary judgment. We have jurisdiction

under 28 U.S.C. § 1291, and we affirm.

On August 7, 2020, officers responded to a report of a physical fight

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

involving a man with a gun in a shopping plaza parking lot. The caller described the man as a light-skin or Hispanic male wearing a white t-shirt who entered a black four-door Honda sedan, and noted a group of about ten other people, including a male with "long dreads and a white shirt."

Following the report, Plaintiff-Appellee Danielle Houston ("Houston") parked her black four-door Nissan in the parking lot and entered a store near a group of Black males, one of which had dread locks and was wearing a white t-shirt. As Houston left the store, she interacted with some of the men before getting back into her car and pulling out of the parking spot. One of the men, who did not match the description in the report, approached Houston's car and appeared to lean into her open passenger window for approximately six seconds. The officers could not see into the car, but they believed that the man could have handed a firearm to Houston.

Officers Bassi, Reeves, Taylor, and Smith then initiated a "high-risk" stop of Houston's vehicle. With their weapons drawn, the officers ordered Houston to get out of her car, questioned and handcuffed her, frisked her, and placed her in the back of a patrol vehicle. Officers Bassi, Smith, and Taylor then conducted a cursory search of Houston's vehicle. Within two and a half minutes of the stop, the officers declared Houston's car "cleared" and radioed "Code 4," meaning that no further assistance was needed. Despite the clearance, the officers kept Houston

24-7268

handcuffed in the back of the patrol vehicle. Officers Taylor and Smith left to help in the parking lot after hearing that the scene "could probably use two more" officers. Officer Bassi also left while Sergeant Reeves stayed with Houston. During the detention, Houston repeatedly stated that the handcuffs were painful due to her pre-existing medical condition and asked for her inhaler.

Officer Bassi returned to the police vehicle about eight minutes later and conducted another search of Houston's vehicle while Sergeant Reeves completed a vehicle records check. The incident lasted about twenty minutes, and Houston was handcuffed in the back of the patrol car for approximately seventeen minutes and thirty-three seconds before Officer Bassi ultimately released her. Houston fully cooperated throughout the stop.

Houston sued Officers Bassi and Reeves under 42 U.S.C. § 1983, alleging that she was unlawfully arrested in violation of the Fourth Amendment. The district court held that the officers were not entitled to qualified immunity on this claim.

We review a denial of qualified immunity de novo. *Villanueva v. California*, 986 F.3d 1158, 1165 (9th Cir. 2021). In determining whether the officers are entitled to qualified immunity, we ask: (1) "[t]aken in the light most favorable to the party asserting the injury," whether "the facts alleged show the officer's conduct violated a constitutional right"; and (2) "if a violation could be

made out on a favorable view of the parties' submissions," whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

Under the Fourth Amendment, "[t]here is no bright-line rule to determine when an investigatory stop becomes an arrest," so courts must look to the totality of the circumstances and conduct a "fact-specific" inquiry in making such a determination. *Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996). To avoid evolving into an arrest "the detention must be carefully tailored to its underlying justification," and "last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983). Further, officers may use "intrusive and aggressive" methods—such as drawing weapons and using handcuffs—without crossing the line into an arrest only "when it is a *reasonable* response to legitimate safety concerns on the part of the investigating officers" given the specific circumstances of the case. *Washington*, 98 F.3d at 1186. *Washington* outlined several "special circumstances" in which courts "allow[] the use of especially intrusive means of effecting a stop":

> 1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; 2) where the police have information that the suspect is currently armed; 3) where the stop closely follows a violent crime; and 4) where the police have information that a crime that may involve violence is about to occur.

*Id.* at 1189. *Washington* also outlined additional considerations, including "the specificity of the information" that the individual being stopped is the actual

suspect and whether that person is likely to forcibly resist police interrogation, and the number of police officers present. *Id.* at 1189–90.

Construing the facts in the light most favorable to Houston, a reasonable officer would have recognized that using such intrusive and aggressive means to detain Houston and unreasonably prolonging her detention was unlawful and violated her clearly established constitutional rights under the Fourth Amendment. *Saucier*, 533 U.S. at 202.

1. When considering the facts in the light most favorable to the plaintiff, *id.* at 201, the *Washington* factors favor Houston in finding that the officers' means of detention were overly intrusive and exceeded the limits of a *Terry* stop. As to *Washington*'s first factor, Houston complied with all the officers' requests and gave no indication that she posed a threat to them or was a flight risk. *See United States v. Del Vizo*, 918 F.2d 821, 825 (9th Cir. 1990); *see also United States v. Ricardo D.*, 912 F.2d 337, 338, 341–42 (9th Cir. 1990). As to *Washington*'s second factor, after confirming that Houston had no weapons on her and that the man with the gun was not in her car, the officers nevertheless handcuffed her and placed her in the patrol car. *See Sialoi v. City of San Diego*, 823 F.3d 1223, 1233 (9th Cir. 2016). As to *Washington*'s third and fourth factors, although the investigation followed a potential crime, there was no specific information that Houston, who arrived at the parking lot after the physical altercation, was involved

in that situation.  And neither she nor any of the men with whom she interacted in the parking lot matched the description of the white or Hispanic man with the gun. Therefore, a reasonable jury could conclude the officers committed a constitutional violation by arresting Houston without probable cause through deploying overly intrusive and aggressive means of detention.  Such a constitutional violation has been clearly established under Ninth Circuit precedent.  *See Washington*, 98 F.3d at 1190–92; *see also Del Vizo*, 918 F.2d at 823–825.

2.	When considering the facts in the light most favorable to the plaintiff, *Saucier*, 533 U.S. at 201, a reasonable jury could find that the officers also unreasonably prolonged Houston's detention.  In assessing whether a detention was unreasonably prolonged, we "examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."  *United States v. Sharpe*, 470 U.S. 675, 686 (1985).  While we generally avoid "second-guessing" officers' tactical decisions, *id.*, the record indicates that Officer Bassi's decision to leave the scene for eight minutes while Houston continued to be detained likely amounted to a violation of Houston's constitutional rights under the Fourth Amendment.

At least nine officers were already assisting in the parking lot and, when the officer in the parking lot stated that they "could probably use two more," Officers

Taylor and Smith responded. Although the search of Houston's car would have only taken a few extra minutes, Sergeant Reeves stated that they were "not in a hurry," and allowed Officer Bassi to leave. And Sergeant Reeves failed to take any steps to investigate before Officer Bassi returned.

Further, the constitutional violation at issue, the unreasonable prolonging of Houston's detention, has been clearly established by our precedent. *United States v. Chamberlin*, 644 F.2d 1262, 1266–67 (9th Cir. 1980) (holding that the detention of an individual for twenty minutes in a police car while the investigating officer searched for another suspect and investigated a potential crime amounted to an unconstitutional arrest); *see also Rodriguez v. United States*, 575 U.S. 348, 354 (2015) ("Because addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate th[at] purpose.'" (alteration in original) (quoting *Sharpe*, 470 U.S. at 684)); *see also United States v. Evans*, 786 F.3d 779, 786–87 (9th Cir. 2015).

**AFFIRMED.**