NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0207n.06

No. 25-5770

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

May 07, 2026

KELLY L. STEPHENS, Clerk

|   |   |   |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| MARK ANTHONY TRENT, | ) | TENNESSEE |
| Defendant-Appellant. | ) | |
| | ) | OPINION |
| | ) | |

Before: McKEAGUE, READLER, and BLOOMEKATZ, Circuit Judges.

PER CURIAM. Mark Anthony Trent appeals the district court's denial of his motion to suppress evidence. As set forth below, we affirm the district court's order denying his suppression motion.

I.

Beginning in November 2023, law enforcement officers received information from interviews with cooperating codefendants and other informants as well as from recorded jail calls that Shaundra Hamilton was traveling to Georgia to obtain large quantities of methamphetamine for distribution in northeast Tennessee. Based on that information, officers obtained a warrant to "ping" the location of Hamilton's cell phone and conducted surveillance at her residence in Kingsport, Tennessee.

On March 3, 2024, pings from Hamilton's cell phone indicated that she traveled to the Atlanta area for a short period of time and then came straight back—a "turn-and-burn" trip. That evening, a black Ford Expedition arrived at Hamilton's residence; officers identified Trent as the

renter of that vehicle. Criminal history checks revealed that both Trent and Hamilton had prior drug charges.

Officers saw Trent and Hamilton leave her residence in the Ford Expedition on March 12, 2024. Trent and Hamilton traveled through Tennessee on Interstate 75 to the Atlanta area and then came straight back via a different route through North Carolina on Interstate 26. Special Agent John Bulla with Homeland Security Investigations, who was following the Ford Expedition, communicated with the Sullivan County Sheriff's Office (SCSO) about initiating a traffic stop once the vehicle entered Tennessee and positioning a canine unit in the area.

Around 2:00 a.m. on March 13, 2024, Lieutenant William Ford with the SCSO stopped the Ford Expedition for speeding, crossing the fog line, and having an illegal license plate cover. After speaking with Hamilton, the passenger, and Trent, the driver, and gathering identification and vehicle information from them, Lieutenant Ford returned to his cruiser, called for the canine unit, ran a records check through the National Crime Information Center, and wrote a warning citation for the traffic violations. Upon learning from dispatch that Trent and Hamilton were "clear," Lieutenant Ford finished writing the citation and then exited his cruiser around 2:10 a.m. When he saw the canine unit pass on the other side of the interstate, Lieutenant Ford placed the citation and other documents on the hood of his cruiser and approached the Ford Expedition to ask Trent and Hamilton for consent to search the vehicle; they declined. Around 2:11 a.m., the canine unit arrived. Lieutenant Ford directed Trent and Hamilton to exit the vehicle so that the dog could perform a free air sniff; they refused. When Trent and Hamilton eventually exited the Ford Expedition around 2:18 a.m., the dog performed an exterior sniff of the vehicle and alerted by sitting at the driver door. The officers then searched the Ford Expedition and found 19 bags of

methamphetamine with a total weight exceeding 18 kilograms, a loaded gun, cash, and drug paraphernalia.

A federal grand jury subsequently returned a multi-defendant, multi-count indictment charging Trent with drug, money-laundering, and firearm offenses. Following his indictment, Trent moved to suppress the evidence seized from the Ford Expedition on March 13, 2024, arguing that the officers unreasonably extended the duration of the traffic stop beyond the time necessary to address the alleged traffic violations. A magistrate judge conducted an evidentiary hearing and issued a report recommending the denial of Trent's suppression motion. Over Trent's objection, the district court adopted the magistrate judge's report and recommendation and denied the motion.

Trent entered a conditional guilty plea to possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), reserving his right to appeal the district court's denial of his suppression motion. *See* Fed. R. Crim. P. 11(a)(2).  The district court sentenced Trent to 218 months of imprisonment followed by five years of supervised release.

II.

In this timely appeal, Trent challenges the district court's denial of his motion to suppress the evidence discovered during the March 13, 2024, traffic stop.  On appeal from the denial of a suppression motion, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Guerrero*, 168 F.4th 454, 459–60 (6th Cir. 2026).  Whether reasonable suspicion exists is a mixed question of law and fact, which we review de novo. *United States v. Taylor*, 121 F.4th 590, 594 (6th Cir. 2024).

The Fourth Amendment protects against "unreasonable searches and seizures" by government officials.  U.S. Const. amend. IV.  A traffic stop is a reasonable seizure "where the

police have probable cause to believe a traffic violation has occurred," regardless of "the actual motivations of the individual officers involved." *Whren v. United States*, 517 U.S. 806, 810, 813 (1996). Trent does not dispute the legality of the initial traffic stop by Lieutenant Ford.

Trent instead argues that Lieutenant Ford, after completing the purpose of the traffic stop, unlawfully extended his detention without reasonable suspicion to conduct a dog sniff. An initially lawful "traffic stop 'can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a warning ticket." *Rodriguez v. United States*, 575 U.S. 348, 354–55 (2015) (alteration in original) (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "To prolong a traffic stop beyond its original 'mission,' police must have reasonable suspicion of additional wrongdoing." *United Sates v. Jordan*, 100 F.4th 714, 718 (6th Cir. 2024) (quoting *Rodriguez*, 575 U.S. at 355). "A reasonable suspicion exists when, based on the totality of the circumstances, a police officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Smith*, 140 F.4th 316, 319 (6th Cir. 2025) (quoting *United States v. Gross*, 662 F.3d 393, 399 (6th Cir. 2011)). The totality of the circumstances "includes the officer's own observations as well as information the officer receives from police reports, dispatch, and fellow officers." *United States v. McCallister*, 39 F.4th 368, 374 (6th Cir. 2022). "It also 'involves commonsense judgments and inferences about human behavior, as well as inferences the officer may draw based on his experience and specialized training.'" *Taylor*, 121 F.4th at 595 (quoting *McCallister*, 39 F.4th at 374).

Lieutenant Ford's mission effectively ended at approximately 2:10 a.m. when he exited his cruiser after writing the citation. But contrary to Trent's argument, Lieutenant Ford had reasonable suspicion of additional wrongdoing to prolong the traffic stop until the canine unit arrived a minute or two later.

Under the "collective knowledge doctrine," we may "impute collective knowledge among multiple law enforcement agencies, even when the evidence demonstrates that the responding officer was wholly unaware of the specific facts that established reasonable suspicion." *United States v. Lyons*, 687 F.3d 754, 766 (6th Cir. 2012). At the time of initial traffic stop, law enforcement officers had received information from multiple sources that Hamilton was traveling to and from Georgia to obtain large quantities of methamphetamine for distribution in northeast Tennessee. Officers had observed Trent's rental vehicle at Hamilton's residence, and the pings from her cell phone indicated that Trent and Hamilton had made "turn-and-burn" trips to the Atlanta area in that vehicle on March 3, 2024, and again on March 12, 2024. Special Agent Bulla testified that drug traffickers often use rental vehicles and license plate covers, like the one on the Ford Expedition, and take different routes, like Trent and Hamilton did on their return trip, to avoid detection by law enforcement. Special Agent Bulla also knew about Trent's and Hamilton's prior drug charges. As for Lieutenant Ford's own observations, he testified that the Ford Expedition's interior was "very trashed up for it to be a brand new vehicle" but "normal" for a vehicle involved in drug trafficking.

Trent argues that reasonable suspicion to prolong the traffic stop was lacking because law enforcement officers did not directly observe him engaging in any drug-trafficking activities. According to Trent, the trip to the Atlanta area "gave rise to no more than a hunch of criminal activity." As the district court pointed out, direct observation of drug-trafficking activities is relevant but not required to establish reasonable suspicion. *See, e.g.*, *United States v. Williams*, 68 F.4th 304, 308–09 (6th Cir. 2023). Based on the totality of the circumstances, Lieutenant Ford had reasonable suspicion to prolong the traffic stop to conduct a dog sniff.

III.

For these reasons, we **AFFIRM** the district court's denial of Trent's motion to suppress evidence.